LOTTINGER, Judge.
This is a suit for personal injuries and property damage arising out of an automobile accident which occurred on the Bayou DuLarge Highway a few miles south of Houma, Louisiana, on Sunday, May 30, 1948. Plaintiff, who was an ice cream vendor at the time, alleges that he was driving his truck north, or towards Houma, with his lights on, and that he made a left turn from his lane of traffic toward one of the roads of the Mulberry Plantation settlement or quarters on the west side of the highway, after -having looked to the front and rear and having seen no traffic approaching from either direction. He alleges further that the accident occurred at about 7:05 P. M; or twilight, and that just as the front wheels of his truck left the paved portion of the highway-he was struck on his right by a car owned by -defendant, Union Producing -Company, and being driven at the time by one of their employees, George Ferguson. It is also alleged that at the time o-f the accident, Ferguson was proceeding without lights and at a speed in excess of seventy-five miles per hour. Joined -as defendants, are the driver, George Ferguson, Union Producing -Company, and the Fidelity and Casualty Company of New York, liability insurer of the latter.
In their answer defendants admit that Ferguson was driving the car on the date *656 and at about the hour alleged within the course and scope of his employment and that he was proceeding south-or-towards Bayou DuLarge. They deny any act of negligence ’on his part and plead that the accident was caused solely by the negligence of plaintiff. The Fidelity and 'Casualty Company of New York reconvened and asked for damages in the amount of $356.08, representing the amount paid for injuries received by Ferguson by them as compensation insurer of Union Producing Company. In the alternative they plead contributory negligence on the part of the plaintiff. The lower court rejected plaintiff’s demands and gave judgment in favor of plaintiff in re-convention as prayed for. The plaintiff now prosecutes this appeal.
At the outset it is apparent that the main dispute concerns factual questions only. The record shows the highway at the place of the accident was of concrete 18 feet in width and straight for one-half to three-quarters of a mile, with good dirt shoulders on either side. It is also shown that the Mulberry Plantation settlement, situated on the west of the highway, consisted of approximately 20 houses with three rather narrow lanes covered with shells. Entering the highway from the east’ and somewhat at an angle, just south of the scene of the accident is a gravel road known as the Acres of Diamonds road.
There is not too much dispute as to the time of the accident. The plaintiff in his petition stated the time to have been 7:05 P. M., while the defendant, Ferguson,'stated that the collision occurred between 6:45 and 7:00 o’clock. It is agreed by counsel that the U, S. Weather Bureau recorded sundown on the day of the accident at 6:55 P. M. The principle dispute in this connection, therefore, concerns the actual degree of darkness' at the time the accident occurred, for defendants admit that Ferguson’s lights had not been turned on and this is one of the principal acts of negligence relied upon by plaintiff.
There were no eye witnesses to the accident other than Ferguson and the plaintiff. Three witnesses who lived in the Mulberry settlement, however, arrived upon the scene of the accident shortly after it occurred. One of these witnesses testified that it was about sundown or just about sundown, but it wasn’t dark. Another of these witnesses testified that he lived about two acres from where the accident occurred, but did not see the accident. He heard the impact and opened the door to his house and saw people standing in the road. The other witness stated that the sun was just down.
The next persons to arrive at the accident, and in fact the people who picked up the injured parties and brought them to Houma, were a Mr. Boudreaux, his wife and family and mother-in-law, Mrs. Lirette. This party had left Houma and were on their way to a fair at Bayou DuLarge. They had proceeded via the Acres of Diamonds road and heard the crash of the collision when about 600 feet from the intersection of that road and the Bayou Du-Large highway. Mr. Boudreaux, who was driving, stated that he had put on his lights when about two or two and one-half miles from the intersection and that the sun was not up at that time, and in this he is corroborated by Mrs. Lirette. Upon reaching the intersection they stopped and waited for a car to pass which was proceeding north or towards Houma. Both of these witnesses testify that this car had its lights on and that it was only because of the lights of this car that they were able to see the accident and a man (who turned out to be Ferguson) standing on the highway trying to flag it down. Boudreaux then drove to the accident, which had occurred some 150 or 200 feet north of the intersection.
The testimony of the plaintiff is that he had turned on all of his lights, consisting 'of six on top, two on the left and two headlights, after serving a customer some three-quarters of a mile from the scene of the accident. At that time, the plaintiff claims that he noticed the sun was just about half-way in the woods and that the sun was going down. This occurred just some three-quarters of a mile from the scene of the accident after serving his *657 last customer before the accident. The defendant, Ferguson, states on the other hand as follows: “ — I’m quite sure it was not dark, because I don’t have a habit of driving without lights.” Concerning whether or not plaintiff’s lights were burning, Ferguson said, “I don’t think they were .burning, 'because it wasn’t dark.” Also he denied that the car which passed the Boudreaux car as it waited at the intersection had its lights burning.
We all know from common knowledge that darkness follows rapidly after sunset. We also know that during the period of dusk or twilight that driving is rendered difficult by reason of limited vision. Just at what stage of darkness it becomes necessary to use lights is difficult to state, but under R.S. 32:290 states that: “Every vehicle operated upon a public highway in this State between one half hour after sunset and one half hour before sunrise, or at any other time when there is not sufficient light to render clearly discernible any person on the highway for a distance of two hundred feet ahead, shall be equipped with lighted front and rear lamps * * * ”
The accepted official time for sunset on the day of the accident was 6:'55 P. M. and if the accident occurred according to plaintiff’s petition at 7:05 P. M., the defendant was still travelling within the grace period as allowed by the statute, particularly: when the evidence- indicates that the atmosphe're was clear, it was a dry day and the sun had just gone down at 6:55 P. M. and that some of the witnesses claim that after hearing the accident they could see people around the scene of the accident some two or three acres away. We therefore do not believe that the defendant was negligent in travelling without lights at that particular time according to the .circumstances as found in the record.
Coming now to the speed of Ferguson’s car we find that he admits that he was driving between sixty and .sixty-five miles per hour. Further, the testimony of the State Patrolman who investigated the accident and. who testified from his report, shows that he found skidmarks 220 feet in length. From this we can only conclude that Ferguson was driving at least seventy miles per hour or perhaps more. In Blashfield’s Cyclopedia of Automobile Law & Practice at Section No. 6237, we find a chart which indicates the distance within which vehicles can be stopped. It indicates that a vehicle travelling 70 miles per hour, that the vehicle is moving at a speed of 103 feet per second and that it takes at least % of a second, ‘ travelling at that speed, 77 feet before the average driver reacts to a warning and that likewise travelling at that speed it takes at least 218 feet for actual stopping distance of car with brakes in excellent condition and that it required a total distance to stop at that speed of 295 feet. There is no indication but that the brakes of the Ferguson car were in excellent condition as the actual skid-marks found on the paved road extended for 220 feet in length. Since the chart referred to above indicated that it required 218 feet for actual stopping distance of a car with brakes in excellent condition, we find that the Ferguson car travelled 22Q feet after he had applied his brakes and was skidding on the road." This further indicates that the Fergusbn car must -have been travelling at a greater rate of speed than 70 miles per hour: We think this .speed amounted to negligent driving under the circumstances.
Counsel for plaintiff has raised the interesting point of whether the Mulberry Plantation settlement is an ’unincorporated town or village within the meaning of our Highway Regulatory Act, Act No. 286 of 1938, which forbids speeds of greater than twenty-five miles per hour in such localities. We do not deem it necessary, however, to pass upon this point having reached the conclusion as stated above.
 The next point to be disposed of is the alternative plea of contributory negligence. On this point, Ferguson testified that plaintiff, veered a little to his left, then straightened out and then without giving any signals whatsoever, turned to his left directly in the path of the car. *658 The testimony of plaintiff is that he started blowing his horn when he neared Mulberry (in order to sell ice cream) and after having looked in both directions, put out his hand and slowly began to make the turn. He states further that he did not see Ferguson when he turned and only saw him when he heard him apply his brakes. We have no way of knowing, of course, in view of the conflict in testimony, whether or not plaintiff did put out his hand. We do feel though that the plaintiff failed to exercise that duty of care required of one in attempting to make a left turn on a much travelled highway. A motorist who is about to make a left turn should carefully survey the surroundings to ascertain whether traffic conditions warrant the action he is about to take and if he fails to do so, he acts at his own peril and responsibility. A left turn on a public highway is an exceedingly hazardous maneuver and a motorist desirous of attempting that movement must first see that it can be made in safety. In this instance, we find that the front wheels of the plaintiff’s vehicle had just left the paved portion of the highway when he. was struck and we feel that under the circumstances that the plaintiff should have observed the defendant’s oncoming vehicle.
Under the circumstances such as these, plaintiff nor defendants are entitled to recover for the proximate cause of the,collision was the concurring negligence of each.
Therefore for the above and foregoing reasons, the judgment appealed from is therefore affirmed insofar as it rejects the plaintiff’s demands and that the said judgment appealed from is hereby annulled and reversed insofar as it grants plaintiff in reconvention a judgment against the defendant in reconvention. It is further ordered as the judgment of this court that the demands of plaintiff in reconvention be dismissed and that the cost of both courts be divided equally between plaintiff and defendant.
Judgment affirmed in part and reversed in part.