HOFFPAUIR, Judge ad hoc.
This suit for personal injury and property damage arose out of an automobile collision which occurred October 13, 1949 on Highway No. 7 about 3% miles north of the City of Bogalusa in Washington Parish, Louisiana. A Chevrolet truck, owned by Cecil Rester, was being driven in a northerly direction by Ellis Berrell, his employee, and collided with a Chevrolet automobile owned by Porter Holden and being driven by his wife with his permission. The Holden automobile, also being driven in a northerly direction, attemped to execute a left-hand turn into a private driveway when struck by the Rester truck. Mrs. Holden was alone in the automobile while in the Rester truck three passengers accompanied the driver. Both vehicles were damaged, and both drivers injured. The collision insurer for the Rester truck, National Retailers Mutual Insurance Co., brought suit as subrogee for the damage occasioned the truck against Porter Holden and his insurer, St. Paul Mercury Indemnity Co.; later, Porter Holden and his wife brought suit against Cecil Rester and his insurer, American Motorist Insurance Co. The suits were consolidated for trial.
The main dispute is concerning the factual situation which existed at the time of the accident. Mrs. Holden testified that she was traveling approximately 35 miles per hour and when she reached a point of 180 feet south of a driveway leading to her home she slowed down, checked through her rear view mirror to ascertain whether or not cars were approaching from her rear, *367 and upon seeing none put her hand out of the window to indicate a left turn off the highway. At a point five or six feet from the driveway she states that she heard a-noise and upon rechecking the rear view mirror she saw a Chevrolet truck only a few feet behind her. She states that she became excited and turned to the left across the highway, whereupon the truck struck her car. She denies that she heard a horn sound to her rear.
Ellis Berrell, the driver of the truck, testified that he had followed the Holden car all the way from Bogalusa, a distance of some 3% miles, and had -attempted to pass her car several times before but was prohibited from doing so because of oncoming traffic. He testified that the time was late in the day or “dusk dark” and he was driving with his lights on. He states that he was traveling 3’5 miles per hour and when he attempted to pass the Holden car he flicked his lights and sounded his horn. As the Holden car turned to the left he applied his brakes and turned to the right but the collision could not be avoided. He denies that Mrs. Holden was giving a hand signal for a left turn. In this he is corroborated by two of his companions; the other was asleep and knew nothing of the accident until after it had happened.
Mr. Holden was standing in his yard near the barn, some ISO to 200 feet from the point of the collision. He corroborates his wife in her statement that she gave a hand signal and that she began slowing down some 180 feet south of the driveway. He states that the truck’s horn was not blown at any time. He also testified that the Rester truck was traveling at a speed of between ’55 and 60 miles per hour.
A Mr. Piggott testified that he was about one-quarter to one-half mile from the place of the accident and heard the collision but heard no other noise immediately prior to that time.
After the accident an investigation at the scene was made by Haynes Wascom, a patrolman on the Bogalusa Police Force. He testified that the Holden car had come to rest on the west side of the highway 100 feet from the point of the impact, and the truck was at rest on the east side of the highway 6 or 8 feet further north than the car. He states that there were no skid marks to indicate where brakes had been applied by either the truck or the automobile. Mr. Holden also stated that the Chevrolet had come to rest 100 feet north of the point of impact.
Whereas the record does not establish the exact time of the accident, it does indicate that it was nearing darkness, or twilight, time, and that it had rained some before the accident although it was not raining at the time of the accident.
The trial judge, after considering the evidence and submitting written reasons for his decision, decided that the negligence of the truck driver, Ellis Berrell, was a proximate cause of the accident and that Mrs.. Holden was guilty of contributory negligence which barred her recovery for personal injuries and recovery by her husband for property damage. Accordingly, the demands of plaintiffs in both suits were rejected at their costs.
Porter Holden and his wife, as plaintiffs against Cecil Rester and his insurer, were granted and have perfected a devolutive appeal to this court.
Plaintiffs have pleaded that the sole and proximate cause of the accident and resulting injury was the negligence of the driver of the Rester truck. The testimony is conflicting as to whether or not the driver sounded his horn preparatory to passing plaintiff’s, automobile. Likewise, there is conflict among the witnesses as to the speed at which the truck was traveling. However, it is uncontradicted that the Holden car was pushed 100 feet after the impact and the paved surface of the road did not reflect any skid marks prior to the impact.
This leaves us with the impression that the speed of the truck was more in conformity with the testimony of Mr. Holden rather than the driver. We do not believe a vehicle moving at the speed of only 35 miles per hour, as testified by the driver, would carry sufficient force to push another vehicle the distance of 100 feet.
Mr. Rester testified that a speed governor was on the' truck but conveys only a vague recollection about its condition or opera *368 tional efficiency. We are not impressed with his testimony and are of the opinion that the Rester truck was traveling much faster than 35 miles per hour.
Furthermore, the truck driver testified that he had followed the Holden car all the way from Bogalusa and noticed that the car reduced its speed to “around 20 (20) miles per hour.” He states further that when he pulled out into the left lane to pass he was about 10 feet behind the car. We think, therefore, after considering the evidence, that the driver of the truck was negligent in traveling at an excessive rate of speed and not taking extra precaution when noticing that the car ahead of him was slowing down.
Similar facts were presented in the case of Goynes v. St. Charles Dairy, Inc., 197 So. 819, wherein this court held that a truck approaching under similar circumstances was negligent in striking a car turning left off the highway. In Adam v. English, 21 So.2d 633, the Orleans Court of Appeal held that a truck driver following another car in a similar manner was negligent.
Considering the evidence and the well-established jurisprudence of this state we must agree with the trial judge that the driver of the Rester truck was negligent.
The defendants have entered the alternative plea of contributory negligence. The trial judge logically reasoned and accordingly held that Mrs. Holden was guilty of contributory negligence in making the left turn in front of the Rester truck. We believe his finding was' correct.
In view of the conflicting testimony, it is difficult to ascertain whether or not Mrs. Holden, did give an arm signal to indicate a, left turn. However, this much we do know. She executed a left turn off of a much-traveled highway without first establishing that it was safe to do so. The Rester truck was not far behind her and had she undertaken proper precaution she would have detected its presence.
A left turn is an exceedingly dangerous maneuver requiring much care and caution. The Highway Regulatory Act in force at the time of the accident, now LSA-R.S. 32:235, makes it mandatory that a left turn cannot be made until it can be made in safety. In Dupre v. Union Producing Co., 49 So.2d 655, 658, this court held that a motorist making a left turn was contribu-torily negligent. The following language adequately expressed the degree of care required of a motorist executing a left turn:
“A motorist who is about to make a left turn should carefully survey the surroundings to ascertain whether traffic conditions warrant the action he is about to take and if he fails to do so, he acts at his own peril and responsibility. A left turn on a public highway is an exceedingly hazardous maneuver and a motorist desirous of attempting that movement must first see that it can be made in safety.”
See also Myers v. Maricelli, La.App., 50 So.2d 312.
The Court of Appeal for the Second Circuit is likewise of the same opinion. Its position is stated in Dudley v. Surles, La.App., 11 So.2d 70. There is a wealth of jurisprudence on the subject but since the above cases state the well-established rule we do not deem it necessary to cite all authorities here.
This court being of the opinion that Mrs. Holden’s conduct constituted negligence, we cannot allow her to recover for her personal injuries nor can Mr. Holden recover for property damage sustained.
The trial judge was of the opinion tliat the negligence of the driver of the Rester truck was a proximate cause of the accident and that Mrs. Holden’s contributory negligence barred plaintiff’s recovery. We do not agree that the proximate cause of the collision was as the trial judge found, rather, we are of the opinion that the concurring negligence of both Ellis Berrell and Mrs. Holden was the proximate cause of the accident. Accordingly, the trial judge is affirmed in denying plaintiffs the relief sought.
Judgment affirmed.