ELLIS, Judge.
This action was brought against Mamie Beard Richard, driver of an automobile which was involved in a collision with a motor-scooter being ridden by the plaintiff, Billy J. Dunnington. The insurer of the automobile, the Southern Farm Bureau Casualty Insurance Co., was joined as a defendant. An exception of nonjoinder of a party defendant was interposed and Jack Richard, husband of Mrs. Richard, was, by supplemental petition, brought into the suit as a defendant. Damages are sought for personal injuries and expenses. The trial resulted in a judgment dismissing the action at plaintiff’s cost and he has prosecuted a devolutive appeal.
The collision in which the plaintiff suffered his damages occurred on U. S. Highway 171, which, in the area of the accident, is a straight concrete highway running north and south. He was driving a motor-scooter, which he contemplated buying.
He had driven the scooter north along the highway about a quarter of a mile when he turned around and headed south. At this time he noticed Mrs. Richard approaching from the north but was able to turn around before she reached him, and headed south on the highway in front of her. He testified he knew the Richard car was overtaking him from the time he started traveling south on the highway, until the scene of the collision.
A short distance south of where the accident occurred there is an intersection with a street which runs east and west. On the *34 northeast comer of the intersection there is a Shell service station, and some 137 feet north of the center of this intersection, there are two mailboxes on the east side of the highway. When the plaintiff reached a point about 75 to 100 feet north of the Shell Station, he attempted to execute a left hand turn preparatory to completing a “u” turn so he could travel north again upon the highway. At this time, according to his own estimate, Mrs. Richard was 25 to 30 feet behind him. He stated he gave a left turn hand-signal and started to turn left when the collision occurred on the left side of the highway.
Mrs. Richard- was driving south on the highway, the only other occupant of the car being her sister-in-law, Mrs. Alvin Richard, who was sitting on the front seat with her. Mrs. Richard who was driving testified that after she -approached and overtook the motor-scooter, and was about a car’s length .from it, she blew her horn. She further stated that when this signal was given Dun-nington made two circular motions with his left arm, which she interpreted as a signal for her to pass him. She pulled to her left and increased her speed slightly. She claimed that at that moment the plaintiff extended his arm straight out to the left and immediately commenced a left turn. She applied the brakes of the car and pulled to her left but could not avoid the collision which occurred on the left side of the highway.
•The testimony of the plaintiff himself and other of his witnesses clearly shpws the accident happened far enough north of the intersection to negative any idea the plaintiff intended to turn at the intersection, but was clearly attempting a “u” turn well before the intersection was reached. Thus, we come to the respective duties of the drivers of both vehicles in such a situation.
LSA-R.S. 32:233, ■ subd. B, states:
“The driver of an overtaking vehicle shall give audible and sufficient warning of his intention before overtaking, passing or attempting to pass a vehicle proceeding in the same direction.”
Mrs. Richard testified positively that she blew her horn once when she was about the length of a car behind the plaintiff. Her sister-in-law was also certain the horn was blown. An eye witness, Atlas Johnson, a witness for the plaintiff, was also positive the horn was blown.
The plaintiff stated he did not know whether or not she blew her horn, and another of his witnesses merely stated that he did- not hear it.
Considering the testimony, it is clear an audible warning was given and that Mrs. Richard did not attempt to pass at the intersection, which was some distance farther south. Also, there is no question of excessive speed involved in this case.
The duty placed upon a “forward” motorist under the factual situation existing in this case is set forth in the following Louisiana Statutes Annotated — Revised Statutes.
32:233, subd. F — “The driver of a vehicle who has been given adequate warnings by an overtaking and passing vehicle, shall promptly give way to his right in favor of such overtaking and passing vehicle and shall not increase the speed of his vehicle until it has been completely overtaken and passed. Nothing herein shall mitigate against the provisions for prima facie responsibility in Subsection C.
32:235, subd. A — “The driver of any vehicle on the highways of this state shall ’ascertain, before turning around' upon any highway, that' there is no traffic, vehicular or pedestrian, approaching from either direction which ' will be unduly delayed and shall yield right-of-way to such approaching traffic and shall not attempt to make a turn unless .-the way is clear.
32:236, subd. A — -“The driver of any vehicle upon a highway of this state, before starting, stopping or turning from a direct line shall first see that such movement can be made in safety He * * ”
*35 An interpretation of the duties required by'the quoted Statutes is found in, Service Fire Insurance Co. of New York v. Suezy, La.App., 77 So.2d 110, 112, wherein this Court said: r ■
“By his own admission the .defendant did not exercise such cautipn, as, although he knew that the Hartner car was following him, he did not look, immediately prior to turning- to. determine that the way was clear. Regardless of whether or not he had given .a hand signal,'he knew that there was traffic-behind him and yet failed to ex-. ercise- the -caution that the law- imposes upon him. By just giving the hand signal Suezy only performed one-half of his duty. He should also have looked to see if the way was clear. If he had looked, he would have seen he could not' make thé turn safely. This Í9 similar to a motorist who comes to an intersection and stops but fails to look for approaching traffic. He only performs one-half of his duty under the law. This was definitely an act of gross negligence on the part of the defendant and was a proximate cause of the accident,-if not the proximate cause of the accident.”
See also: Callia v. Rambin, La.App., 78 So.2d 44.
The plaintiff here knew the Richard car was close behind him. This is clear from his -testimony wherein he -stated: ■
“A, * * * I knew a .car was coming up behind me. I had saw it in the distance when I had come north and turned around to head south, and as I recall, I turned — I knew she was behind me. — I turned to see how close she was. She was approximately as far as from here to that desk over there or the table.
“Q. Is that about 25 feet? A. 25 or 30 feet.
“Q. Mr. Dunnington, before you commenced this turn, you knew that • Mrs: Richard was overtaking and ’.following you, is that correct? A. That’s right.
Q. You saw her did you not, so that you knew she was baclc there behind ? ’ -A. I had seen- her, Mrs'. Richard, when I made my turn at the north end. I knew she was overtaking me.
• Also, the witness, Johnson, placed Dun-nington approximately 10 feet in -front of the Richard car when he gave a signal and started his turn. ■; ■ -■■■■.
Lt. Shuck, an eye witness, and owner of the motor-scooter, stated' that he was watching the plaintiff and was worried about his scooter because the car following was very close behind it.
It can be conceded therefore, that the Richard car was very close to the motor-scooter when the plaintiff attempted to turn left. As to the. signal he gav.e,, it could have been misunderstood since hé testified himself the scooter was rocking a little, and that there was no stability on -a two-wheel motor-scoOter; - that he could have made some motion with his arm other than the required signal for a left hand turn. Mrs. Richard stated she interpreted the signal to be a wave to pass. Be that as it may, according to the Suezy case, supra, even though Dunnington gave a correct signal he thereby performed only half of his duty. The .other half demanded he should have been sure the way was. clear to execute such a maneuver. Certainly it could not have been done in safety, as is evidenced by the immediate resulting collision. . •
To make a left turn on a public highway has been repeatedly held by our jurisprudence1 to be an exceedingly hazardous undertaking, and any motorist attempting it must first see that it can be made in safety; he should' caréfully survey thé’ surroundings to determine whether traffic conditions warrant such action; that his failure to do so causes him to act at his “own-peril and responsibility”.
*36 See: Parker v. Home Indemnity Co. of New York, La.App., 41 So.2d 783, Holden v. Rester, La.App., 66 So.2d 366, Service Fire Insurance Co. of New York v. Suezy, La.App., 77 So.2d 110.
The contributory negligence of the plaintiff was a proximate cause of the accident. If he did give the correct hand signal, yet a survey of the situation with which he was faced would have demanded he yield the right-of-way and wait until he could complete his turn in safety.
For the reasons assigned, the judgment of the lower Court is affirmed, at the cost of the appellant.