Dorothy Williams **DENT** et vir, Appellants,

v.

Mrs. T. S. **FALVEY,** Appellee.

No. 6523.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 12, 1963.

Rehearing Denied Oct. 9, 1963.

Ralph Balasco, Houston, for appellants.

McClain & Harrell, Conroe, for appellee.

McNEILL, Justice.

The Dents, appellants, sued Mrs. Falvey, appellee, for damages for injuries to Mrs. Dent alleged to have occurred when the Dents' Chevrolet was struck by Mrs. Falvey's Cadillac as the cars traveled northerly over an overpass along Interstate Highway 45, a 4-lane divided arterial highway in Montgomery County.

The highway was under construction but parts of it were finished. The finished part had two north bound lanes and two south bound lanes. These lanes were marked. Mrs. Falvey left Houston about 3 p. m. and was returning to her home in Conroe. Mrs. Dent and her two small sons traveled behind Mrs. Falvey for a considerable distance—because of the construction, much of the way was two laned, one for cars going south and the other for cars going north. It was misting rain, but the visions of the drivers were not impaired. The two cars were going about 40 miles per hour and held their relative position some 45 feet apart.

As they approached the overpass where the collision occurred, the highway had been completed and the two lanes of travel each way began. At this place Mrs. Falvey moved over into the right lane and Mrs. Dent continued on into the left. As Mrs. Falvey traveled up the incline of the overpass she saw ahead in her lane, a barricade which had been placed there by workmen who had been painting the metal railings along the east side of the bridge of the overpass. She immediately put on her brakes, and her car's brake lights came on. Immediately upon noticing the brake lights on the other car, Mrs. Dent saw the barricade in Mrs. Falvey's lane. She did not change the speed she was traveling, about 40 miles per hour. Due to this, Mrs. Dent was in the act of passing the Cadillac; in fact, the front of the Chevrolet had just moved ahead of the front of the Cadillac, when the latter turned left and it's left front end struck the Chevrolet just behind the right front wheel. Neither car moved appreciably after the impact; but substantial damage was done to both cars. Just before the impact occurred, Mrs. Dent heard one of her sons, who was sitting by her, scream, and looking backward, saw the other car was about to hit hers, causing her to put on her brakes.

The jury found: (1) Mrs. Falvey failed to keep proper lookout; (2) she changed lanes without first ascertaining such change could be made in safety; (3) she failed

to make proper application of her brakes; (4) she failed to bring her car to a stop before the collision, and this was negligence; (5) she failed to turn her car to the right before collision and this was negligence; and that each of said acts of negligence was a proximate cause of collision. In addition, Issues 13 and 14 and the jury's answer thereto were:

"Do you find from a preponderance of the evidence that the failure on the part of Mrs. Dorothy Williams Dent to sound the horn on her automobile immediately prior to attempting to pass the car ahead of her was negligence as that term is herein defined for you?

"Answer: We do.

"If you have answered Special Issue No. 13, 'We do', and only in that event, then answer:

Special Issue No. 14

"Do you find from a preponderance of the evidence that such negligence, if any you have found, was a proximate cause of the collision made the basis of this suit?

"Answer: We do."

These two issues appear to have been submitted on the theory of common law negligence—not on the basis of Art. 801, Subdn. (F), Vernon's Ann.Penal Code. All other issues relating to contributory negligence of Mrs. Dent were answered favorably to her. On the basis of the answers to Issues 13 and 14 the trial court rendered a take nothing judgment against the Dents.

■ Vigorous assault is made upon this judgment. It is contended (1) that Mrs. Dent was, as matter of law, not contributorily negligent in failing to sound her horn, and (2) as matter of law, her failure to sound her horn was not a proximate cause of collision. And alternatively, (3) the findings are without sufficient support in the evidence. Since these questions are akin, we will consider them together and, in doing so, it must be borne in mind that the accident happened on a multilane highway; therefore, not all of the rules of the road applying to single lane traffic necessarily apply. Minugh v. Royal Crown Bottling Co., Tex.Civ.App., 267 S.W.2d 861; Wallace v. Taxicabs of Tampa, Inc., (Fla.App.) 112 So.2d 574. A person traveling upon a multilane roadway has the right to assume, in the absence of indication to the contrary, that a fellow traveler will continue in his lane of travel. This is so because Art. 6701d, Sec. 60(a), Vernon's Ann.Civ.St., provides:

"The driver of a vehicle shall drive as nearly as practical entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."

What indication did Mrs. Dent have that Mrs. Falvey was going to move out of her lane into the inside lane? It is said that Mrs. Falvey had only three choices, (a) to hit the barricade, (b) to stop, or (c) to turn left. And that this was a situation putting Mrs. Dent on notice that Mrs. Falvey might turn left. It is undisputed Mrs. Falvey put on her brakes as she neared the barricade. And she stated she kept them on to the point of impact. When asked whether she assumed that Mrs. Falvey was slowing down when her brakes came on, Mrs. Dent testified:

"A. I had no way of knowing exactly what she was going to do. The only thing, that she had applied her brakes and, by that, I assumed she was stopping.

"Q. You could have assumed just as well that she was going to turn to the left, could you not?

"A. I don't assume anybody is turning in any direction unless they give me a signal.

"Q. All right. And the reason you didn't try was because, as you say, you thought Mrs. Falvey was going to stop.

"A. That's true."

Mrs. Dent further stated she saw no signal indicating Mrs. Falvey was intending to turn into the left lane ahead of her. Mrs. Falvey knew Mrs. Dent was behind her, but she did not know how far. Under the above quoted section of Art. 6701d, she owed the duty to ascertain whether she could turn into the left lane with safety before she started that movement. She testified her car was equipped with two rearview mirrors—one above and at the middle of the windshield and the other outside at the left front corner of the car. She stated before she started turning into the left lane she looked in both mirrors and did not see a car. It can only be concluded therefrom that either the plane of the mirror on the left side of her car was not adjusted properly, or that she failed to look; for had she properly looked, she would have seen the Chevrolet approaching along side.

■ Where one lane of a multilane thoroughfare is obstructed, traffic in the other lanes have the right of way and in the absence of notice that a person in the obstructed lane intends to cross to another lane, the free traffic may move onward. A traveler in an unobstructed lane, ordinarily need not anticipate that a driver in the obstructed lane will attempt to change lanes until the movement may be done in safety. De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95; Excel Ins. Co. v. Ocean Ac'dt & Guar. Corp., Ltd., 144 So.2d (La. App.) 561. To overcome this, Counsel for Mrs. Falvey says that since she stated that she put on her directional light after putting on her brakes, Mrs. Dent had notice that the Cadillac was preparing to come into her lane. Ordinarily, such a signal, with brake lights on, by a car in an obstructed lane of a highway as here involved would warn a traveler following in the adjoining lane that an attempt to move over into that lane would likely be made ahead of him.. But, Mrs. Falvey's testimony about her directional light being on was poor indeed. There was no evidence of any other car in the vicinity of the two involved. Having said she saw no car behind her, as she prepared to make the turn, why, in the first place, was there occasion for turning on the directional light? Initially she testified she did put the directional light on. On cross examination, after stating she never turned the steering wheel to the right causing the directional light to trip off after starting the left turn, she said she examined her car after the accident and it had no lights burning; although in a deposition given before the trial she stated "the lights were all on". Her concluding testimony on this at the trial was:

"Q. As a matter of fact, Mrs. Falvey, you don't really remember putting on a directional signal, do you?

"A. No. I wouldn't swear that I put it on."

Though the inconsistent statements made makes this evidence weak, it constitutes some evidence that the directional light was on. Herd v. Wade, Tex.Civ.App., 63 S.W. 2d 253 (W.R.); U. S. Fidelity & Guaranty Co. v. Carr, Tex.Civ.App., 242 S.W.2d 224. In answer to the question as to when she turned on the directional light, she said: "Before I turned left, I turned—I turned the directional lights."

Assuming it was turned on just as the brake lights lit up, could Mrs. Dent have seen it in time to have blown her horn and warned Mrs. Falvey from turning into the left lane? When she applied her brakes, she said she did not know Mrs. Dent's car was near her. Mrs. Falvey could not estimate the distance she was then from the barricade. Since hers was the only testi-

mony on this, we must accept Mrs. Dent's estimate: the Cadillac was 1½ or 2 car lengths, or between 40 and 50 ft. away from the barricade; and· she, Mrs. Dent, was one to two car lengths, or 40 to 50 ft. behind and to the left of the Cadillac at the time. Each travel lane measured 11 ft. in width, and the cars, as the Chevrolet gained on the Cadillac, were within about 5 ft. and along side of each other. In such situation, with a slight turn of the steering wheel one car would be out of its lane and into another. The cars were practically opposite each other at the time the turn was made.

Let us view the evidence from Mrs. Falvey's viewpoint as we are required to do on the questions whether there is any evidence to support the findings: If Mrs. Dent had blown her horn immediately after she saw the Cadillac brake lights come on, would this have averted the crash? When 40 to 50 ft. from barricade Mrs. Falvey put on her brakes and kept them on to point of impact; she turned on the directional light indicating left turn and her turn into the left lane was a gradual one. Mrs. Dent, 40–50 ft. back in the left lane, could have seen the directional light begin blinking on the Cadillac. Mrs. Falvey stated that she turned this light on before she started her gradual turn and she was then no farther than 50 ft. from the barricade. There existed in the interval between the time the brake lights came on and the moment of impact less than 2 seconds. Let us assume that the Dent car was 100 ft. away from the barricade and about 40–50 ft. back of Mrs. Falvey when the lights of the Falvey car came on. Traveling at 40 miles per hour, the Dent car was going 58.6 ft. per second. It would, then, take a little less than 2 seconds to travel 100 ft. to a point opposite the barricade. From this distance should be deducted "reaction time" on the part of Mrs. Dent. No proof of reaction time is in the present record. In Teston v. Miller, Tex.Civ.App., 349 S.W.2d 296, we recog-

nized that a short time, termed "reaction time", exists for the driver of a car to comprehend a situation. In several jurisdictions ¾ of a second has been judicially noticed as the average person's reaction time. Kaan v. Kuhn, (Wyoming) 187 P.2d 138; Wiebe v. Seely, 215 Or. 331, 335 P. 2d 379; Mo. Pac. R. Co. v. Hancock, 195 Ark. 414, 113 S.W.2d 489; Ryans v. Blevins, D.C., 159 F.Supp. 234; Blashfield's Cyc. of Auto. Law, Vol. 9C, Sec. 6237, pp. 410–413; Vol. 1 Blashfield, Sec. 751, p. 695; Dupre v. Union Producing Co., La.App., 49 So.2d 655; Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495; 84 A.L.R. 2d 981. See also Dissent in Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79, at p. 88. This rule has not been followed in decisions of intermediate appellate courts of Ohio, Georgia, and Florida. See McCoy v. Gilbert, 110 Ohio App. 453, 169 N.E.2d 624; 84 A.L.R.2d 964, 988, 989. However, other courts of Ohio have applied the rule. Ashbrook v. Cleveland Ry. Co. (Ohio App.) 34 N.E. 2d 992; State v. Bush (Ohio Com.Pleas) 182 N.E.2d 43.

The Missouri rule, that in the absence of proof, the court will apply reaction time as ¾ of a second, West v. St. Louis-San Francisco Ry. Co., Mo., 295 S.W.2d 48, commends itself to us. Applying this rule, Mrs. Dent's car traveled 43.95 ft. during such average reaction time. The collision occurred south of the barricade. How much south is not shown but since Mrs. Falvey was making a gradual turn to the left around the barricade, it must have been at least 15 ft. south. Subtracting 43.95 ft. + 15 ft. from 100 ft. leaves 41.05 ft., which at 40 miles per hour represents less than a second in which Mrs. Dent could have blown her horn and Mrs. Falvey could have, in turn, reacted to it in which to have averted the accident. Do these circumstances warrant the jury finding that had Mrs. Dent sounded her horn, the collision would have been averted? We doubt it would have been; but our

doubt is not sufficient to say, as a matter of law, there was no evidence of negligence in failing to sound the horn; nor to say as matter of law the failure to sound the horn was not a proximate cause of the collision. Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359 (363). But when we consider all the evidence on these findings in answer to Issues 13 and 14, the evidence supporting such findings is so weak, inconsistent, and speculative as to be insufficient, and they should not stand. On another trial the reaction time of the parties may be proved as well as the distance south of the barricade where the collision took place; and a delineation of the Cadillac's path as it gradually turned into the left lane could perhaps be shown.

It is also urged that Issues 13 and 14 were on the weight of the evidence in this: the undisputed evidence showed Mrs. Dent was not "attempting to pass" the other car as the circumstances bringing about the accident developed. The undisputed evidence does show Mrs. Dent was not "attempting to pass" the other car. She did not change the speed nor alter the course of her car. But the use of the complained of phrase in the issue was unfortunate. The phrase is one that has been adopted and used for years in connection with one car attempting to pass another on two lane roads; it does not seem appropriate for multilane highways. A phrase such as "the process of moving by" would appear to have been a better choice. The phrase used was a comment upon the weight of the evidence—in fact, the court unintentionally thereby supplied evidence where no evidence existed. However, in view of our holding that the evidence is insufficient to sustain the jury's findings on Issues 13 and 14, it is unnecessary to decide whether the comment of the court upon the weight of the evidence was reversible error.

The judgment is reversed and the cause remanded.