HERGET, Judge.
This is a suit by Mrs. Norma L. Brady, widow of Archie Shoemaker, Jr., individually, and for and in behalf of her six minor children, for damages arising out of the wrongful death of her husband and the father of the children.
Decedent was riding as a guest passenger in the rear seat of an automobile driven by Eric J. Morris, insured by defendant, American Fire and Casualty Company, when said automobile collided with a pickup truck driven by Allen W. Yawn. Shoemaker, age 27 years, was thrown from the automobile by the force of the impact, receiving multiple injuries resulting in his death.
In a separate suit William H. Thomas, who was also a guest passenger in the Morris vehicle and who received injuries in the accident, instituted suit to recover damages against Eric Morris, individually, and his insurer, American Fire and Casualty Insurance Company. The two cases were consolidated for trial. From a judgment of the Trial Court in each suit in favor of Defendant and/or Defendants rejecting the demands of Plaintiffs, Plaintiffs appealed.
Morris was driving in a southerly direction in St. Tammany Parish on Louisiana Highway 21, a blacktop two-lane highway. Allen Yawn entered the highway from a private driveway extending from the west and the collision resulted. Concededly Allen Yawn was negligent in entering the favored highway in the face of on-coming traffic, so that the issue raised is, Was Eric Morris guilty of negligence which was the proximate cause of the accident; or, Was *901 he guilty of negligence which was a contributing cause of the accident? The Trial Court concluded the negligence of Yawn was the sole proximate cause of the accident and therefore rejected Plaintiffs’ demands.
The record reveals the accident occurred within the corporate limits of the Town of Sun and the posted speed at the situs was 40 miles per hour.
Mr. Morris testified his vehicle was equipped with a warning device which could be set so as to warn the driver when the set speed was exceeded; that prior to the accident he had set the warning device for 40 miles per hour; that at no time prior to the accident was there any warning buzz and, for such reason, he was certain he was not exceeding the speed limit of 40 miles per hour; that Yawn entered the path of his vehicle when he was only some fifty to seventy-five feet distant therefrom and, despite the immediate application of the brakes, he was unable to avoid colliding with the Yawn vehicle.
Yawn testified that he first observed the Morris vehicle when it was some 50-75 feet distant from his stopped position and because of the movement to the right made by the Morris vehicle immediately prior to his entering the highway he assumed that Morris intended to turn into the driveway from which he was egressing and, for that reason, he proceeded forward and entered the highway. He testified that in his opinion Morris was not driving in excess of forty miles per hour. This reasoning is without foundation for if Yawn observed the Morris vehicle traveling at a speed of 40 miles per hour at the time, there could be no basis for his belief Morris intended to turn into the driveway. Consequently, we do not believe Yawn, in fact, observed the approaching Morris vehicle prior to entering the intersection and, accordingly, his testimony as to the speed of the Morris vehicle is without basis.
Mr. Glenn Mizell testified he was waiting at a point some two hundred feet south of the point of collision to enter Highway 21 and observed the approaching Morris vehicle as the Yawn truck pulled out into the road. He estimated the speed of the Morris vehicle at that time to be 40 to 45 miles per hour. He conceded the difficulty of making a true estimate of the speed of the on-coming car.
Plaintiff Thomas, in a deposition taken two or three days after the accident and while he was in the hospital, said Morris was traveling at 40 miles per hour. On the trial of the case he denied he had made such a statement and asserted that in fact Morris was traveling at 90 miles per hour and that he had importuned Morris to slow down.
The other witnesses who testified were Trooper 'Clarence Wagner of the Louisiana State Police and Mr. Leo Evans who was Marshal of the Town of Sun. This accident occurred shortly after the noon hour on June 26, 1960 and the testimony on the trial of the case was taken nearly two years later on February 14, 1962. At the time of the investigation of the accident Trooper Wagner made a memorandum of his observations and on giving his testimony had this memorandum to refresh his memory. Officer Wagner related that immediately prior to the point of collision the Morris vehicle left 110 feet of skidmarks and following the collision the vehicle continued in an uncontrolled movement, finally turning to face in the opposite direction from which it was proceeding, coming to a stop 110 feet distant from the point of collision. From the resulting skidmarks and from his knowledge gained from investigations of automobile accidents, it was his opinion the Morris vehicle had been traveling at a speed of 60 miles per hour immediately prior to the collision. In view of the positive testimony of Officer Wagner as to his physical finding of fact, we believe his estimate of the speed of the Morris vehicle to have a reliable basis upon which to make the estimate. Mr. Evans made no memorandum but testified only from memory. His opinion that *902 the Morris vehicle was traveling 40 miles per hour immediately prior to the collision is purely speculative and has no basis on which we can conclude same was sound.
In Blashfield’s Cyclopedia of Automobile Law and Practice, § 6237, at page 413, there is printed a chart giving the distance within which vehicles traveling at various speeds can he stopped, to which we have given our approval, Dupre v. Union Producing Co., La.App., 49 So.2d 655. The chart depicts a vehicle traveling 40 miles per hour traverses 44 feet during the average reaction time of ¾ of a second and will require 71 feet of stopping distance upon the application of the brakes, or a total of 115 feet including reaction time and stopping distance. It further shows a vehicle traveling 50 miles per hour will require 55 feet reaction time and 111 feet actual stopping distance, or a total of 166 feet. Here, again, we make reference to the testimony of Officer Wagner that the Morris vehicle left 110 feet of skidmarks immediately prior to this collision.
From the skidmarks, it is therefore apparent that immediately prior to this collision Mr. Morris was exceeding the speed limit of 40 miles per hour. And it is evident that Morris’ speed was a contributing factor in ¿he causation of the collision for, had he been traveling within the speed limit when he .observed the Yawn vehicle enter the highway, he would have been in a position to avoid the collision either by bringing his car to a stop or veering to the right of the offending vehicle. We therefore are of the opinion that the accident was due, in part, to the negligence of Mr. Morris and, accordingly, Plaintiffs are entitled to recover for the damages sustained by them.
The limitation of the policy of defendant, American Fire and Casualty Company, was $5,000. Mr. Morris was not sued individually by the Plaintiffs in this suit. There can be no question but that the loss of the husband and the father of six children compels an-award of the full policy limit.
For these reasons the judgment is reversed, and it is ordered, adjudged and decreed that there be judgment in favor of Plaintiff, Mrs. Norma L. Brady, individually, as the widow of Archie Shoemaker, Jr., in the full sum of $1,400 and in favor of Mrs. Brady as the duly qualified natural tutrix of the minor children, Norman Earl, June, Archie Raymond, Peggie Lee, John and Rickie Wayne Shoemaker, in the full sum of $600 each, against American Fire and Casualty Company, together with legal interest from date of judicial demand, and all costs.
Reversed and rendered.