DOMENGEAUX, Judge.
This is a suit in tort arising out of a vehicular accident which occurred at 2:00 a.m., on December 16, 1966, at the intersection of Airline Highway and Shrewsbury Road north of New Orleans. Defendant Samuel Fulton was the operator of a large tractor trailer and had approached the intersection from a northerly direction. At the intersection he attempted to negotiate a left turn but did not complete it before his trailer was struck by an automobile driven by plaintiff, Joseph Moliere, who had approached from a southerly direction. As a result of the collision Joseph Moliere, hereinafter called plaintiff, suffered the loss of his automobile and bodily injuries including a fractured leg and multiple rib fractures necessitating a lengthy hospital stay. Plaintiff sued defendant, Samuel Fulton, hereinafter called defendant, and the liability insurer of his employer, in the business of whom defendant was engaged at the time, Liberty Mutual Insurance Company. The trial court found that plaintiff was contributorily negligent and, without determining whether defendant was negligent, dismissed plaintiff’s suit. Plaintiff after being denied a new trial, perfected an appeal to this court.
The relevant testimony at trial came from plaintiff and an alleged eye-witness, Horace Robinson, on one side, and defendant and the Louisiana State Trooper that investigated the accident, Donald Brisolora, on the other. Plaintiff testified that he had been engaged in assisting a friend in the operation of a pool hall and tending bar, and was on his way home alone in his 1952 Chevrolet when the accident occurred. He said that he had had nothing to drink as, being a gambler by profession, he did not drink since he had to keep a clear head. Airline Highway, he said, has four lanes north of the intersection with Shrewsbury Road and three lanes south of *479 the intersection. A short distance south of the intersection Airline Highway dips in the fashion of an underpass. Plaintiff stated that as he emerged from the dip in the road he was traveling in his left or inside lane at thirty-five miles per hour and that the semaphore traffic signals at the intersection were green in his favor. He stated that he was well out of the dip in the road when he saw the truck approaching the intersection and at a distance of some fifteen or twenty feet from it. At that point plaintiff says that he was forty-five or fifty feet from the intersection, but that when he was thirty-five or forty feet from the intersection the truck suddenly made a left turn across his path. Plaintiff said he then applied his brakes and, calculating that he would be better off to slide along the edge of the trailer rather than strike the tractor, turned his steering wheel to the left and accomplished just that.
Defendant’s version is that he was hauling a fork-lift machine to a location in New Orleans of which he was unsure. Because of this and because he was fearful of not finding a place to park his truck in the city, he had decided to park at what appeared to be a closed service station, on his left, for a few hours. He had stopped at the intersection, in obedience to the traffic signal, partially in the left turn lane. When a green arrow indicated that he should make his turn, he started to move across the highway toward the service station in first gear. He was approximately half way into the left northbound lane when he observed plaintiff’s automobile approaching at a distance of some 300 feet. Defendant estimated plaintiff to be traveling at seventy-five to eighty miles per hour and observed that when plaintiff applied his brakes his automobile began weaving, then veered to its left until it collided with his truck in the trailer section. According to defendant the truck had ten forward gears on it and although upon seeing plaintiff he attempted to speed up to clear the road, he was only able to get into second gear and attain a speed of some five miles per hour before the collision. Defendant estimated that by the time he crashed plaintiff had slowed to about 35 or 40 miles per hour.
Mr. Robinson testified that having finished his working day at the service station where he was employed he was at a service station on the intersection of Airline Highway and Shrewsbury Road where his friend was employed, when he witnessed the accident. He states that as he was putting gasoline into a customer’s car with an automatic pump, he observed plaintiff’s automobile approaching the intersection with the traffic light green in its favor. He did not know how fast the plaintiff was traveling but assumed that if he were going too fast he would have been killed. The truck, according to this witness, was moving toward the intersection in the outside southbound lane and suddenly, without stopping at the intersection, it made a left turn without signaling, against a red light, and across plaintiff’s path. Mr. Robinson went on to say that he had his eyes on both vehicles at all times and saw the actual collision. This although he was facing south, looking at the left side of the truck, and plaintiff’s automobile hit the right side of the truck.
The state trooper who investigated the accident testified that Airline Highway at its intersection with Shrewsbury Road has six lanes, a black-top surface, and a speed limit of forty miles per hour. He stated, as did defendant, that the weather was dry. (Plaintiff and Mr. Robinson had said it was damp and slightly foggy). The trooper arrived some five to ten minutes after the accident and found plaintiff’s automobile in the left, northbound lane and defendant’s 1966 GMC truck was across the northbound lane pointing toward the lake. Its front bumper was approximately at the left edge of the outside, or right, northbound lane. The right front of plaintiff’? automobile was against the right side of the trailer toward the front of it. The automobile was in the trooper’s opinion *480 a total loss. He remembered the defendant telling him that he “was making a left turn and that he had stopped in the turning lane,” but did not recall speaking to plaintiff. Also he asked if there were any witnesses but was unable to locate any. Most significantly he found two skid marks which started at the front wheels of plaintiff’s automobile and ran into a southerly direction on Airline Highway. These he measured with a roller-tape and found them to be 161 feet in length.
The trial judge in reaching his decision relied heavily on these skid marks in conjunction with a chart showing the stopping distance of automobiles at various speeds which is to be found in Blashfield’s Cyclopedia of Automobile Law and Practice, at § 6273, Vol. 9 C p. 413, and was introduced in evidence. Using that chart he calculated that plaintiff had to be traveling in excess of sixty miles per hour. This since the chart shows a stopping distance of 160 feet to be indicative of 66 feet of reaction time which adds up to a total of 226 feet, the distance it takes to stop an automobile traveling at 60 miles per hour and equipped with excellent brakes. This same chart shows the total distance, including reaction time and braking time, required to stop an automobile traveling at forty miles per hour to be 115 feet. Since plaintiff’s automobile left skid marks of 161 feet we may conclude that he saw defendant’s truck making its left turn when he was no closer to it than 161 feet. If we apply the stopping distance of 115 feet said by the chart to be all that is required to stop if one is traveling at 40 miles per hour, it becomes evident that plaintiff in any case would have had sufficient time to avoid the accident had he actually been observing the speed limit. Of course adding strength to both of these conclusions is the fact that plaintiff’s automobile did not in fact stop in a distance of 161 feet, but instead was still traveling with sufficient speed after it had covered the distance to be completely demolished upon its collision with the defendant’s truck.
Counsel for plaintiff argues that the court may not accept such charts as the one herein considered as conclusive evidence of speed before a collision. We agree, but on the other hand were we to completely disregard these charts we would be closing our eyes to scientific reality. While they are not conclusive of the speed at which an automobile was traveling, they are indicative of an approximate speed, when the variables present are considered, and have as such been accepted many times in our courts. Stafford v. Insurance Co. of State of Pennsylvania, La.App., 170 So.2d 702; Shoemaker v. American Fire and Casualty Company, La.App., 157 So.2d 900; Bourgeois v. Francois, La.App., 152 So.2d 383; Dickerson v. Lorren, La.App., 45 So.2d 221. We think it is proper to use these charts as a guide in estimating the approximate speed of a vehicle in cases where the prevalent conditions are not such as to diminish the accuracy of the charts.
Counsel for plaintiff further urges that the trial court erred in not according more weight to the testimony of Mr. Robinson as opposed to the physical evidence of the skid marks. While it is true that the testimony of an apparently disinterested witness, if credible, is generally entitled to great weight, Thrash v. Continental Casualty Co., La.App., 6 So.2d 75, this must be balanced against the trial judge’s essential function of evaluating the credibility of the witnesses. It is an oft cited principle of law that the trial court’s evaluation of the witness’ credibility may not be disturbed on appeal unless clearly erroneous. Physical facts, unlike witnesses, if properly interpreted do not mislead, and the indication of excessive speed which is to be found in the skid marks left by plaintiff’s automobile corroborates defendant’s estimate of plaintiff’s speed. Mr. Robinson, on the other hand, did not know how fast plaintiff was traveling but could only say that “ * * * he couldn’t been going too fast or he’d have been dead and wouldn’t be here today.”
*481 Having found that plaintiff was negligent in that he was traveling beyond the legal speed limit, and that his negligence was the proximate cause of the accident in that had he not been speeding he could have stopped in time to avoid the accident, we need not reach the question of whether defendant was negligent. Plaintiff’s negligence in any case bars his recovery.
For the foregoing reasons, the judgment of the trial court is affirmed at plaintiff’s cost.
Affirmed.