TURNER et ux. v. TEXAS ELECTRIC
SERVICE CO.
No. 12969.

Court of Civil Appeals of Texas.
Fort Worth.
Sept. 14, 1934.

Rehearing Denied Oct. 19, 1934.

Clay Cooke, of Fort Worth, for appellants.

Cantey, Hanger & McMahon, of Fort Worth, for appellee.

LATTIMORE, Justice.

This is an appeal from a judgment for defendant upon a verdict.

The twelve year old son of appellants was electrocuted on a high line tower of appellee, upon which he was climbing near a high tension wire, and this suit for damages is predicated upon the turntable doctrine as applied in McCoy v. Texas Power & Light Co. (Tex. Com. App.) 239 S. W. 1105.

The jury found that the tower was not *"unusually* attractive (italics ours) to children; that the appellee was negligent in not maintaining obstruction guards; in not maintaining warning signs; in not fencing the tower; and that each was a proximate cause; that deceased was not negligent in climbing on the tower; that he failed to exercise ordinary care for his safety in climbing on said tower and coming in contact with the wire; that same was contributory to the accident; that he failed to use ordinary care to keep a proper lookout for his own safety; that same was a proximate cause.

The jury in deliberation advised the court that it found the tower attractive to children, but not unusually attractive, and inquired if such justified an answer of "yes" to the question whether the tower was "unusually attractive." The court replied that they should answer all questions submitted "from the evidence." No exception was taken to the question as submitted originally in the charge, or to the answer of the court to the query from the jury. We therefore do not consider whether such charges by the court were correct or not. We cannot say, as a matter of law, that the tower was unusually attractive to this deceased.

The jury debated the meaning of said question, and some juror stated that it meant that the tower must be more attractive than other towers in the line. This is not a statement of an evidentiary fact. It is merely an interpretation of the court's charge, which any juror was equally qualified to deny. If the charge was not clear, then it was the duty of appellants to demand that the court make it clear, and, had they availed themselves of this right, they could here seek relief. But they may not gamble on the verdict and now complain. This is particularly emphasized by the fact that, when the jury made their uncertainty known in open court, the appellants still sat silent.

Several jurors testified concerning the deliberations of the jury, and the record is gorged with improperly admitted testimony,

which, if we considered it, would serve only to impeach the verdict. We feel that we should call the attention of the trial court to the fact that, while receipt of improper communications by a jury may be from one of the jurors, it is not shown by statements "we agreed" or "we believed" or "we understood." Such statements ought to be stopped promptly by the trial judge. Out of seventy pages of testimony in the transcript we get four or five lines of proper testimony that a named juror told the jury that their answer that the tower was not unusually attractive to children would not prevent the plaintiffs' recovery, and that three of the jurors refused to agree to such answer until such statement had been made, and only then in reliance on such answer. This has been held to be reversible error by our Supreme Court in Walker v. Quanah, A. & P. Ry. Co., 58 S.W.(2d) 4. We recommend to the trial judges that they impress on juries in special issues trials that they must not discuss or consider the effect of their answers upon the judgment to be rendered. A few moments thus consumed may save many days and dollars to litigant and taxpayer.

■ The jury having found that the deceased was guilty of contributory negligence, it becomes immaterial that the answer to the "unusually attractive" question was obtained by misconduct. Concede the answer to be "yes," and plaintiff is still defeated by contributory negligence, as found.

■ The case called for a definition of ordinary care applicable to the defendant, and also another definition of ordinary care applicable to the deceased boy of twelve years of age. Each was given, and no exception was urged to any want of clarity. The language of the charge is clear. Some jurors testified that they applied to the questions concerning the deceased's contributory negligence the definition of ordinary care which was given as the standard of care for the defendant, and would not have so answered those questions had they applied to the deceased the definition given in the charge as the measure of ordinary care for the deceased. We think a juror may not be heard in such a case to impeach his verdict by saying he became confused as to which definition applied to the boy and which to the defendant.

■ There remains only the complaint of appellants concerning the conduct of the trial judge on the presentation of the jurors to testify on motion for new trial. The judge reminded the jurors of the oath taken and the instructions he had given them to consider nothing but the evidence, and that they discuss no matters dehors the record, and that their answers should be based on the evidence and nothing more, and that their deliberations be confined to a discussion of the evidence. So far those instructions are to be commended. The trial court then drew a distinction for the jury between misconduct and impeachment and commanded them to tell of any misconduct, and that, if such occurred, he would set the verdict aside. We do not indorse this last lecture to the jury in toto, but can see no reversible error in it, since no showing is made that any juror concealed anything.

We have carefully read all the statement of facts made on motion for new trial below. While the trial judge was more arbitrary than is best conducive to justice, still we do not find any of the errors which are assigned as such by appellants to be reversible.

Affirmed.