**B. A. TESTON, Appellant,**

v.

**J. J. MILLER, Appellee.**

No. 6345.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 7, 1961.

Rehearing Denied Sept. 27, 1961.

Keith, Mehaffy, McNicholas & Weber, Beaumont, for appellant.

Clark, Thomas, Harris, Denius & Winters, Austin, Glenn Faver, Jasper, H. A. Coe, Jr., Kountze, for appellee.

McNEILL, Justice.

Action under Guest Statute, Art. 6701b, Vernon's Ann.Tex.Civ.St. On April 1, 1958 appellant, B. A. Teston and wife, invited appellee, J. J. Miller and wife, to ride with them as their guests in appellant's automobile on a trip from Woodville to Beaumont. The parties to this suit were lifelong friends and close neighbors as well as being related by marriage, appellant and appellee's wife being brother and sister. On the trip to Beaumont, which was normal and uneventful, appellant drove a 1958 Ford automobile, while appellee rode in the front seat with him, and their wives rode in the rear seat. The same seating arrangement was used on their return trip to Woodville, when at the intersection of State Highways 63 and 69, in Hardin County, Texas, appellant's automobile collided with another car. As a result of that collision appellee sustained personal injuries and this suit was the outgrowth thereof.

The trial court submitted the case on special issues in answer to which the jury found: (1) Appellee was injured in the accident; (2) that appellant failed to bring his car to a stop at the intersection involved; (3) that this failure to stop his car was not gross negligence; (5) appellant failed to yield the right of way at the intersection; (6) that this was gross negligence; (7) such negligence was the proximate cause of appellee's injuries; (8) immediately before the collision as he approached the intersection, appellant increased the speed of his car; (9) that this was not gross negligence; (11) that appellant failed to keep a proper lookout; (12) this failure was gross negligence; (13) this gross negligence was a proximate cause of appellee's injuries; (14) that an occupant of appellant's car did not warn appellant of an approaching automobile; (18) that the collision was not the result of an unavoidable accident; (19) issue on damages which the jury allowed in the sum of $5,000.

In addition to having timely filed motion for instructed verdict, after the verdict appellant filed his motion to disregard the jury's findings in answer to Issues 6 and 12, the jury having found gross negligence in answer to Issue 6 because of appellant's failure to yield the right of way, and having found gross negligence to Issue 12 since appellant failed to keep a proper lookout. Both motions were overruled. Appellant filed no motion for new trial.

We are presented with three points of error, a discussion of the first one of which,

we think, is pertinent and the action thereon will dispose of the case. This first point urges there was no evidence of a probative nature from which the jury could have found that defendant was guilty of any act of gross negligence which was the proximate cause of appellee's injuires. In passing upon this point the evidence must be looked at most favorably from the standpoint of appellee. In so doing, we set forth the following evidence:

As stated earlier in this opinion, the trip to Beaumont during the morning was normal and uneventful. On the return trip the parties had traveled several miles and stopped at a fruit stand beside the road and made some purchases. This was about 1:30 or 2 o'clock in the afternoon. Returning to the car appellant, the driver, started to resume his normal speed which was 45 or 50 miles per hour. As they were proceeding northwardly a short distance beyond the fruit stand they reached the fork or a wye in the road, Highway 69, going northerly to Kountze, Highway 63 proceeding northeasterly to Silsbee. The junction of these highways is so controlled that a car proceeding, as was the appellant's, would proceed past the junction of the two highways a short distance along the Silsbee route and would then proceed in a westerly direction in a one-way traffic lane along a curve a distance of about 200 feet where this lane intersected a one-way traffic lane going south from Silsbee. At the northeast corner of this intersection a highway "Yield the right of way" sign was situated to give the right of way to the southbound Highway 63 traffic over the westbound Highway 69 traffic. The pertinent intersection is practically at right angles, both lanes for traffic being about 20 feet wide. Appellee testified that the Teston car was going about 50 miles per hour until it entered the one-way traffic lane westwardly that led to the main part of Highway 69. At this point appellant slowed his car down to about 30 miles per hour as he was rounding this curve, but when he was within some 60 or 70 feet from the middle of the

intersecting south one-way lane he speeded his car up to about 40 or 50 miles per hour as the roadway straightened its course. At this time, or just before resuming his speed, appellee testified he heard Mrs. Teston's voice in the rear exclaim "that car's going to hit us" but instead of slowing down or putting on his brakes, appellant proceeded onward and within a split second after such outcry the collision occurred, the front end of appellant's car was struck by a car going at a rapid speed approaching from the right in the southbound lane of Highway 63, throwing both appellant and appellee out of the car onto the ground. Appellee further testified that appellant decreased his speed in the curve and gradually started to increase it again in the same manner a person does when he comes to an intersection, looks and then decides to go ahead; that appellant was driving normally under the circumstances. Both cars were in their respective right sides of the lanes traveled and all of the area to the north of the intersection for several hundred yards was open and unobstructed.

Appellee further testified that shortly before the accident he and appellant were riding along talking and that he had turned in his seat to better hear appellant, so appellee's back was in the direction whence the other car came, and he did not see it until after Mrs. Teston's exclamation and then it was within 25 or 30 feet "from us" and appellant's car was then about 30 feet from the center of the intersection.

No witness stated appellant failed to look at all for traffic at the intersection; appellant's testimony being that he did look, saw no car and proceeded on but since appellee was seated on his right from whence the car came he said he could not see very far up the highway in that direction, and that he did not hear his wife give any outcry or exclamation. He stated that while he had traveled this road three or four times and knew that a yield right of way sign was there to control traffic from his direction, he did not observe the sign that day. "I don't know, I was just hazy driving along

and I know I slowed up." He further stated "it was an oversight." And again he stated he overlooked the car and did not see it coming.

The undisputed testimony shows that while the highways involved are usually very busy, on this occasion there was little traffic.

Mrs. Miller testified by deposition. She stated that nobody had said anything to appellant about the way he was driving until his wife called out just before the collision, and that she thought this was done as they were getting into the intersection; that after the outcry of her sister-in-law, her brother, appellant, went on. She did not know whether he speeded up but he did not slow down.

■ In viewing this evidence from the standpoint most favorably to appellee, we have concluded that there was none to sustain the jury's findings either to Issue 6 or to Issue 12. The trial court correctly defined gross negligence in the following language:

> "By the term 'gross negligence', as used in this Charge, is meant more than momentary thoughtlessness, indifference, or error of judgment. There must be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the rights, welfare or safety of the person or persons to be affected by it."

No complaint is made of this definition. It is common knowledge that a usually careful driver may, through inadvertence, overlook or momentarily forget either to yield the right of way, to stop at a stop sign or to keep a proper lookout. This, of course, does not excuse him for his negligence but normally at least only ordinary negligence may be charged in such circumstances. The jury in the present case convicted appellant on two grounds of gross negligence, failing to yield the right of way and failing to keep a proper lookout. These two find-

ings are closely related: not having seen the oncoming car he could see no reason to yield the right of way. The only evidence which could be said to indicate any act of conscious indifference to the rights of others on the part of appellant is the testimony of appellee that after Mrs. Teston's outcry, appellant started going faster. If appellant heard this outcry and if thereafter he had time to have stopped or avoid the collision and he failed to do so, then we think there would be evidence of such a nature which perhaps would raise the issue of gross negligence. But here there was only a split second, a term which means less than a second, intervening in which to act and the court takes judicial knowledge of the fact that there is some time, though short, known as "reaction time". This, coupled with both the testimony of appellee and wife that the cars were within some 25 or 30 feet of each other when, upon the outcry, they first saw the other car, under the facts fail to justify the submission of an issue of gross negligence. Rogers v. Blake, 150 Tex. 373, 240 S.W.2d 1001; Gill v. Minter, Tex.Civ.App., 233 S.W.2d 585 (W.R.).

■ We think the judgment below should not stand for a second reason. The jury found (under Issue 14) that appellant was not warned of the approaching automobile. This is not a case involving a motion for judgment notwithstanding the verdict but one to disregard the findings of gross negligence under Issues 6 and 12 and for judgment. Rule 301, Texas Rules of Civil Procedure. If strictly a motion for judgment notwithstanding the verdict, it may be granted only in the event an instructed verdict could have been given. We think this is not true as to that part of Rule 301 which provides for motion to disregard one or more findings of the jury and of judgment in behalf of a movant. While the parties have not briefed the point, we have, in the time available, found the case of Houston Fire & Casualty Ins. Co. v. Walker, 152 Tex. 503, 260 S.W.2d 600, which we think justifies our consideration of the find-

ing under Issue 14 in passing upon the motion to disregard the findings in answer to Issues 6 and 12. In the Walker case a like motion was made to disregard the jury's finding in answer to Issue No. 4 that proximate cause existed because there was no evidence to support its finding in view of the jury's finding in answer to Special Issue No. 3. In passing upon this point the court held that while there was no statement of facts in the record, (260 S.W.2d at page 603) "We must presume that there was some evidence authorizing the submission of Special Issue No. 3. If so, that was some evidence of causation and the court could not therefore render judgment non obstante veredicto. Considering the court's rulings together they amount to this: There was some evidence of causation and therefore a peremptory instruction would have been improper and, likewise, a judgment non obstante veredicto; but there was no evidence other than that relevant to Special Issue No. 3 which would support the jury's finding on Special Issue No. 4." The Supreme Court approved the action of the trial court in sustaining the motion to disregard the finding under Issue No. 4 in this language:

"We are well convinced from a consideration of the transcript as a whole that it is a case in which the trial court by necessary implication has ruled that the only fact issue on causation was found adversely to respondent by the jury's answer to Special Issue No. 3, the effect of which answer was to leave no support in the evidence for the jury's answer to Special Issue No. 4."

Though in that case there was no statement of facts, it will be noted the court in the first quotation pointed out that it must be presumed, since the trial court submitted Issue No. 3, that there was evidence of causation justifying its submission.

Appellee strongly urges that Fancher v. Cadwell, 159 Tex. 8, 314 S.W.2d 820, dictates affirmance of his judgment. There, Cadwell arrived at a residence about 11 p. m., to take a babysitter home. This residence was 50 to 100 feet north of a four-lane east and west highway. The highway was divided in the middle by a 6 foot gravel esplanade. He drove his car into the private driveway and "honked" his horn for the passenger and turned out the lights of his car. When she was seated by him in the front seat, Cadwell immediately backed out of the driveway onto the north side of the divided highway with the lights of his car still turned off. As soon as he backed out he stopped the car momentarily to change gear and while he was thus stopped he saw the car approaching at a speed of 70 to 75 miles per hour about 100 feet from him.

"The facts show that in spite of the close proximity of the oncoming car, the respondent changed the gear of his car and proceeded to drive without lights out into the four-lane highway and diagonally down the lanes of traffic reserved for west-bound traffic in an easterly direction and directly into the path of the automobile which he had observed approaching as heretofore indicated." 314 S.W.2d 821.

Thus Cadwell actually saw a fast moving car close to him as his car was stopped on the shoulder of the highway with its lights out, and still he started up cutting diagonally across the highway directly into the path of the oncoming car. From the time the babysitter got into the car until the collision it was estimated that from 1½ to 3 minutes expired. The facts here stated sufficiently distinguish the case from the present one. Appellant, here, failed to see the car until it was practically at him, a split second before the collision.

The judgment of the district court is reversed and judgment here rendered that appellee take nothing by his suit.