Leroy H. LUCKEY by Next Friend L. H.
Luckey, Appellant,

v.

Charles K. ADAMS et al., Appellees.

No. 181.

Court of Civil Appeals of Texas.

Tyler.

Dec. 16, 1965.

Robert C. Cox, Erhard, Cox & Ruebel, Dallas, for appellant.

Fred T. Porter, Leachman, Gardere, Akin, Porter & DeHay, Dallas, for appellees.

SELLERS, Justice.

This is an appeal from a summary judgment. Leroy H. Luckey, appellant, brought this suit against Charles K. Adams, d/b/a Custom Automotive, appellee, in the 162nd District Court of Dallas County.

The suit is the result of an automobile accident which occurred September 23, 1956, at which time the appellant was 19 years of age. The petition of appellant alleges that, while said appellant was operating a "dragster" owned by appellee in a timed speed trial on a race track in San Antonio, the accelerator "hung" and would not release. Damages were sought against appellee on the basis that he was negligent in knowingly furnishing for appellant's use a vehicle containing a defective accelerator shaft.

By an amended pleading on June 8, 1964, another ground of recovery was alleged in that appellee was charged with negligently permitting appellant to operate the dragster without giving adequate instructions to appellant who was known to be an inexperienced driver. The appellee moved to strike the second cause of action on the ground that the same was barred by the two-year statute of limitation. This motion was overruled by the trial court.

The appellee, in his amended answer, plead as special defenses that the collision in question was proximately caused by acts and/or omissions upon the part of the appellant, that appellant assumed the risk in driving the dragster, and that the accident in question was unavoidable.

Appellee filed its motion for summary judgment based upon the pleadings and depositions on file. This motion was not controverted by affidavits or other reply by appellant. The motion of appellee for summary judgment was granted, from which ruling the appellant has duly prosecuted this appeal.

The depositions on file which are material on this appeal are those of appellant and appellee; and from a review of both depositions we gather the following undisputed facts:

The deposition testimony of appellant shows that appellant became interested in "drag racing, hot rods, dragsters, and things of that kind when he was between the ages of 14 and 15 years." Appellant actually began to race stock cars as early as 1953, racing said vehicles as high as 75 miles per hour on drag strips in many locations. Subsequently, appellant acquired a 1954 Olds which was converted so that it would operate at higher speeds, and appellant raced this automobile for two years until he acquired a 1934 Ford roadster, which also was converted to operate at higher speeds. This roadster was a specialized racing machine; it was not registered as a motor vehicle and driven

on the public highways, but was towed from place to place and entered in racing events. During the latter part of 1955 and 1956 appellant raced this Ford roadster on tracks in Texas and Louisiana obtaining a speed of 99.99 miles an hour at one racing strip. In the latter part of 1956, the engine from the 1934 Ford roadster was removed and placed in a 1932 Ford roadster belonging to appellee, which roadster was again driven by appellant at high speeds ranging from 105 miles per hour up to a maximum of 116.78 miles per hour. After engaging in numerous racing events, both in and out of the State of Texas, and after winning an event at Waco, Texas, with a clocked speed of 104 miles per hour, appellant and his family took the roadster to the National Championship Races in Kansas City, Missouri. At the Kansas City Championship Races, appellant won his class and was given a trophy for attaining a speed of 113.77 miles per hour. In addition to actual racing experience, appellant admitted in his deposition that because of his career in racing, he had learned a lot about the mechanics of racing cars, and was a pretty fair mechanic himself because of the work that he had done on these type vehicles.

Appellee was also at the above described Kansas City event and took with him the dragster which was involved in the collision made the basis of appellant's suit. It was during this time that appellant first saw the dragster operated. Appellant and appellee subsequently went together to the regional championship races in San Antonio, where appellant for the first time actually drove the dragster.

From his deposition testimony, appellant remembered nothing at all about the details of the accident in which he was injured. He remembers only that on the morning in question, he checked in as the driver of the dragster, and that the dragster was checked by the inspectors at the racing event for safety. Appellant himself, however does not even remember

getting into the dragster prior to the run which ended with the collision.

In appellee's deposition, appellee confirmed from his knowledge the prior racing experience of appellant as above described, particularly with reference to the National Championship trials in Kansas City. Appellee testified that he had seen the appellant drive many times in racing events, and that he was confident of appellant's ability to drive racing vehicles. With reference to the condition of the dragster, appellee testified that the dragster had been raced a number of times prior to the date of appellant's accident, and that at no time had there been any complaint of any defect. Appellee himself had personally checked the linkage for clearance, and stated his opinion that he knew no reason why the engine would not shut off on the occasion of the accident. The linkage in the dragster was the same as that at the time the dragster was raced in the Kansas City Championship event, and it had not been raced subsequent to that event except on the occasion in San Antonio when appellant was injured. Also, appellee testified that the vehicle had been carefully checked over or all safety features by one of appellees' employees. A further check just prior to the accident had been made by the officials in charge of the racing event in San Antonio. In particular, the throttle linkages were checked and were found to be in safe condition by those racing officials.

Appellee did testify about the facts surrounding the accident in question. Appellee testified that appellant first drove the roadster down and through the course at a slow speed to warm up the oil. Appellee testified that later in the day appellant asked to drive the dragster so as to feel it out, and he was told to drive it on a warm-up road but to take it easy. It was on this occasion that the appellant started out at a rate of speed faster than appellee had expected him to drive, but appellee still thought nothing about it and had looked away briefly when someone hollered that the car was not stopping. When appellee looked around again he saw a cloud of dust at the far end of the racing strip (about ½ mile away) which he later discovered had been caused when the vehicle catapulted over a stone curbing and rolled over several times.

■ Appellant in his brief sets out the following questions which he says were for the jury under the deposition evidence of appellant:

"Did the Appellee request the Appellant's son to drive the subject 'dragster'?

"Did the Appellee know that Appellant's son had never driven a vehicle like the subject 'dragster' before?

"Did the Appellee give any instruction or teaching in the method of driving the subject 'dragster'?"

If it can be said that these issues were raised by the evidence, it would seem that they fail to show that the trial court was in error in granting the summary judgment.

■ The burden was upon the appellant to show that the court was in error in granting the summary judgment where there was an ultimate and controlling issue that should have been submitted to the jury. Rule 166–A, Texas Rules of Civil Procedure.

Apparently there was no examination of the wrecked dragster to determine what was wrong with the mechanical parts that could have caused the collision. If the evidence was sufficient to show that appellee failed to instruct the appellant how to drive the dragster, should it then be presumed that the wreck was brought about by such failure? We think not. The evidence must raise the issue that the collision was the proximate cause of the fail-

ure to give such instructions. The rule is stated in Vol. 40, Tex.Jur.2d, page 691:

"Where the cause of the catastrophe is left by the evidence to conjecture or speculation, a judgment in favor of the plaintiff is not sustainable. Although it is the jury's exclusive function to determine the credibility of the witnesses and the weight or probative force to be attached to their testimony a jury may not arbitrarily find negligence when there is no proof of any. If the evidence leaves it equally probable as to whether the calamity was caused by the act of the defendant or by some other force or instrumentality, there can be no recovery. No liability is shown where an injurious occurrence is as reasonably attributable to a nonactionable cause as to one that is actionable. * * *"

We do not want to be understood as holding that there was a duty on appellee to instruct appellant in the driving of the dragster. Appellant under this record was an experienced driver of racing cars. If there was a difference in the operation of the dragster and his own car, the evidence does not point out the difference. The appellant was engaged in a very dangerous business of driving racing cars. This is evidenced from the case of Kuemmel v. Vradenburg, Tex.Civ.App., 239 S.W.2d 869.

Arising in San Antonio where the suit was for damages to a child in attendance at one of these races, and where the negligence alleged was that the management had not built a sufficient fence to protect the child from what could be expected to happen at one of these races, the court quoted from the case of Arnold v. State, 163 App.Div. 253, 148 N.Y.S. 479, 483, as follows:

"'Reasonable care required special construction to provide for the safety of those invited by the state to a place of public entertainment provided by itself. * * *

"'If a race cannot be held without inherent and extreme risk to life and limb, the command of the law is that it must not be held at all.

"'[T]he greatest and most obvious source of danger from a nonprotected track was not guarded against except by a flimsy fence, which could not resist a powerful car, with tremendous momentum, in case it left the track, as the commissioners knew or should have known was liable and even likely to happen. * * *

"'I hold the state liable for holding or permitting to be held on its own ground, under the circumstances disclosed by the evidence, such a fast race, with powerful cars, on an unprotected track, without the exercise of reasonable care to provide against accidents well known to be likely to happen.'"

A much stronger case on the facts is Walker v. Yellow Belly Drag Strip, Tex.Civ.App., 351 S.W.2d 353. It was held there that the driver of another's car under the circumstances was guilty of contributory negligence, and we so hold that appellant assumed the risk and was guilty of contributory negligence as a matter of law. The fact that the appellant at the time was a minor does not protect him from the law of contributory negligence. Sargent v. Williams, 152 Tex. 314, 258 S.W.2d 787.

There was not the slightest evidence in the depositions to the effect that there was anything mechanically wrong with the dragster at the time it was turned over to appellant for a warmup on the track. The dragster had been raced several times before without trouble. It had been raced the week before and immediately before the collision had been examined by a committee of the race track to see that it was in proper condition for racing. These facts would negative any mechanical defects in the dragster at the time of the collision.

Appellant points out that the drag-ster contained parts taken from an airplane and used alcohol for fuel. The record discloses that these so-called racing cars are the product of various parts of different make cars being combined in a racer for the very purpose of speed. Such was done by appellant in his own car. Apparently they were so built that they could not be registered by the state for use on the highway. The operation of such cars is not controlled by our state statutes.

The judgment of the trial court is affirmed.