**Dewey Edward WALKER et al., Appellants,**

v.

**TEXAS ELECTRIC SERVICE COMPANY, Appellee.**

**No. 17393.**

Court of Civil Appeals of Texas, Fort Worth.

July 6, 1973.

Rehearing Denied Sept. 14, 1973.

---

2. As was the situation in Wyatt v. Wyatt, Tex.Civ.App., Er.Ref., 188 S.W.2d 685, cited by plaintiff.

Cantey, Hanger, Gooch, Cravens & Munn, and J. A. Gooch, Howard Barker, and Richard L. Griffith, Forth Worth, for appellee.

OPINION

LANGDON, Justice.

This is an appeal from a summary judgment in an action for damages initiated by

Dewey Edward Walker, Roy Schapansky, James D. Seaver, James T. Lewis, and Richard Hancock, arising out of an airplane crash which occurred at Mangham Field in Tarrant County, Texas, on July 21, 1969. Plaintiffs' first amended original petition alleged five acts of negligence by the defendant, each constituting a proximate cause of the damages suffered by the plaintiffs. Alternatively, it was alleged that the erection, creation, and maintenance of defendant's power line constituted a public nuisance. In its second amended original answer the defendant alleged that the poles and wires in question constituted a peaceful, beneficial and lawful use of the premises, that the plaintiffs trespassed when they crashed into defendant's wires, that the action of the plaintiff pilot was dangerous to defendant's property, that the use did not constitute a public nuisance, that the defendant owed no duty to the plaintiffs and others similarly situated, that the condition and existence of the wires in question was open and obvious, that the plaintiffs were barred from recovery by the doctrine "volenti non fit injuria", that the plaintffs Walker and Hancock were negligent in several particulars, that this negligence was imputable to the remaining joint owners of the aircraft, that the wires in question were lawfully erected and that any recovery allowed against the defendant would be unconstitutional. Depositions of Dewey Edward Walker, Roy L. Schapansky, Richard C. Hancock, plaintiffs, and the deposition of J. H. Mangham, owner of Mangham Field, were before the court when defendant filed its motion for summary judgment on August 7, 1972. The motion for summary judgment was accompanied by the affidavit of R. M. Beard, an employee of the defendant. In response to this motion, plaintiff, Dewey Walker, filed a controverting affidavit as well as an affidavit of the witness, Merritt T. Goble. On September 26, 1972, the trial judge signed and rendered summary judgment for the defendant "on each and every ground stated within such motion of defendant."

This appeal is from that judgment based upon eight points of error.

The first two points assert the court erred for the reason that the appellee did not establish that there was no genuine issue of material fact as a matter of law (Point 1), and because appellee's affirmative defenses were not conclusively established (Point 2).

By their points three through eight the appellants contend that the court erred in entering the judgment it did because at all times relevant to this suit there existed genuine issues of material facts regarding appellee's alleged acts of negligence, each of which was a proximate cause of the damages sustained by them: (3) in erecting and maintaining its power line in such proximity to the final approach path of the south end of the north-south runway of Mangham field so as to constitute an immediate hazard to aircraft approaching said runway from the south; (4) in erecting and maintaining its power line so close to the glide path of aircraft approaching the south end of the north-south runway of Mangham field so as to create an unreasonable and dangerous obstruction to aviation; (5) in erecting and maintaining its high line in such a manner that the uppermost wire of said high line was virtually invisible to aircraft using the north-south runway of Mangham field; (6) in failing to give warning of the hazardous obstruction of said high line wires to pilots using the north-south runway of Mangham field; (7) in failing to make the uppermost wires of its high line identifiable by use of pennants, plastic balls, or some other similar inexpensive device; and (8) in its erection, creation and maintenance of its power line in such a position to Mangham field as to constitute a public nuisance.

We affirm.

Based upon our review of the entire record in this cause and the controlling authorities, we find and hold that the appellee established that there was no genuine

issue of material fact as a matter of law, that appellee conclusively established its affirmative defenses and that the trial court therefore correctly granted its motion for summary judgment.

Appellants' points one and two are accordingly overruled.

For the purpose of clarity, the facts pertinent to our discussion are set forth in the paragraphs next following.

The facts are well summarized by appellant, Dewey Walker, in his Aircraft Report made just after the incident in question. In that report he said, "The aircraft is based at Mangham airport. After normal preflight inspection in which no abnormalities were noted except low main gear tire pressure, tires were inflated to normal pressure and we departed Mangham for a local flight. Takeoff was made to the north and time was spent allowing Mr. Hancock to engage in coordination exercise and approach and departure stalls, followed by takeoffs and landings at Greater Southwest airport. We returned to Mangham airport and had made two approaches to the airport prior to the accident. On this approach which I made, I momentarily lost sight of the top wire of high voltage transmission line and the aircraft tail wheel assembly made contact with the top wire. The aircraft stalled at approximately 100 feet AGL immediately and the aircraft pitched down near vertical. My actions at that time are difficult to remember accurately and I only remember cutting power when it became apparent I would not be able to fly out of the stall completely. I estimate the recovery lacked approximately 10 degrees rotation and a few feet of altitude to have been successful. The aircraft struck the ground approximately 75 feet south of the south end of the N/S runway and came to rest about 40 feet from the runway end."

The aircraft involved was equally and jointly owned by all appellants herein except Richard C. Hancock, who had been test-flying the aircraft for purposes of joining the partnership or joint venture. Hancock had made two attempts to land before Walker took over and attempted a third and final landing. Both pilots had logged several hundred hours of flying time out of this airport before this incident.

At the time of the incident (July 21, 1969) appellee was the fee owner of the land over which transmission lines were run approximately parallel to the airport's southern boundary. This was the first accident which ever occurred by reason of aircraft hitting these wires.

The facts above summarized are undisputed.

The deposition testimony of Dewey Edward Walker is summarized as follows: He had about 300 hours flying time out of Mangham airport; since flying out of Mangham and prior to the accident in question he had been "very much so" aware of the Texas Electric power lines; as far as he knew the power lines had never been raised or lowered, and the poles had never been moved; prior to the accident the closest he had ever come to the wires "would be a rough estimate, about probably 10 to 15 feet above the wires"; the runway is about 2600 feet long; the lines are approximately 500 feet from the beginning of the southern edge of the runway; the highest wire is about 100 to 110 feet from the ground; he knew at all times that the wires were there; he knew the height of the wire and the location; he "saw them as I made the approach, I did lose sight of them as I turned the final"; the airplane, to the best of his knowledge was in good working order; he "momentarily lost sight of the top wire of high voltage transmission line" when he was "Maybe 1500 feet, or so, from the wires"; there was nothing unusual about the flying conditions, "it was an ordinary summer day".

A summary of the deposition testimony of Richard C. Hancock follows: He had 400 to 500 hours flying time; he has had

his pilot's license since 1947; both he and Dewey Walker had control of the plane; they had been in flight about an hour before landing; visibility was good, it was just a *"common summer day"*; it was about 6:00 P. M.; after two attempts at trying to land the plane and each time he was "too high . . . to complete a landing" Dewey Walker said, "Well, it's getting late, let me have it and I'll land it"; having had approximately 300 hours flying out of Mangham he was well acquainted with the wires; he had never hit the wires; he had come "within 20 feet on several occasions" of the wires, "It doesn't necessarily scare you, but it does cause concern"; the wires were visible from the ground; he knew where the wires were but "temporarily lost sight of them until we were right on them . . . it was more likely that the wires blended into the foilage underneath them"; he was aware that the wires were "approximately 100 feet" off the ground; an altimeter is installed in the plane to tell how high the plane is from the ground; he does not recall looking at the altimeter.

A summary of physical facts concerning the erection and maintenance of appellee's structure compiled by appellee's employee, R. S. Beard, follows: appellee was and still is the owner in fee of the land over which towers were erected and transmission lines and static lines were run in the Spring of 1955. The land is located immediately south of the Mangham Airport boundary. The power lines in question run approximately parallel to the southern boundary of the Airport. On or about July 21, 1969, date of the incident in question, the said land of the appelle supported steel towers 95 feet in height which were spaced at 800 foot intervals over such land. From these towers were strung 138 KV electric transmission lines and shield or static wires, ⅜-inch in diameter. The uppermost wire, which was a static wire, was 95 feet high from the ground level at its highest point nearest the towers, and the height of this wire at the exact center-

line of the north-south Airport runway was approximately 93 feet. The nearest point in perpendicular distance between the airport boundary and the nearest transmission line is 454 feet. The sole purpose for the erection and maintenance of the towers and transmission lines was and is to furnish electrical power to appellee's customers. The sole purpose for the ⅜-inch extra high strength steel static wire, which was the wire which came into contact with the aircraft flown by the plaintiffs in this cause at the time and on the occasion in question, was to protect the 138 KV lines from lightning.

On the date of this incident and at all times prior thereto, the construction and maintenance of the towers, transmission lines and static wires upon the land, owned in fee by appellee, was in compliance with and in conformity to Article 1436a, Vernon's Ann.Tex.St., the National Electrical Safety Code, the National Bureau of Standards Handbook 81, and the Code of Federal Regulations Title 14, Chapter 1, Sections 77.1 through 77.23. The trial court was timely requested by appellee to take judicial notice of this statute, as well as the federal authorities therein referred to.

In considering the physical facts as they relate to the statutory authorities, the case of Houston Lighting & Power Company v. Brooks, 161 Tex. 32, 336 S.W.2d 603 (1960) is controlling. There the Court states: " . . . we think it desirable at the outset that we clarify the matter by saying that the lines of petitioner were properly located in compliance, with the ordinance of the City of Houston and Article 1436a, Vernon's Ann.Civ.St., which incorporates the National Electrical Safety Code. . . .

"For further clarification, since the relationship of the parties is important in determining the duty owed by one party to the other, we wish to point out that under the undisputed facts that whatever duty is owed respondent by petitioner is as a mem-

ber of the public and not as an employee or as an invitee of petitioner. . . . "

■ In the case at bar the appellee, owner in fee of the land upon which its structure is built, has granted no flight easement to any person or entity and none exists of record. There is no inherent danger per se in the very existence of these structures.

The Supreme Court in Western Auto Supply Company v. Campbell, 373 S.W.2d 735 (Tex., 1963) said: " 'The owner's duty rises no higher than that of making the appearance conform to the reality, of making the condition as good as it looks, or of bringing to the knowledge of the visitor that it is as bad as it is. The visitor, having no right to enter the premises, is not entitled to find it safe for his visit; he is only entitled to know its real condition so that he may intelligently make up his mind to accept or reject the owner's permission to enter it.' Bohlen, supra, page 183. Cf. Harvey v. Seale, Tex., 362 S.W. 2d 310, 312–313 (1962)."

■ The appellants had no implied permission to enter appellee's utilized airspace. In the many cases holding an invitor liable to invitees, the evidence showed either an actual knowledge of danger or facts from which the owner should have known of danger. See Blaugrund v. Paulk, 203 S. W.2d 947, 949 (Tex.Civ.App., 1947, ref., n. r. e.); H. E. Butt Grocery Co. v. Johnson, 226 S.W.2d 501 (San Antonio Civ.App., 1949, ref., n. r. e.); and Lang v. Henderson, 147 Tex. 353, 215 S.W.2d 585 (1948).

In the present case this was the first accident of such nature ever occurring on appellee's premises. Cases where danger either was known or should have been known constitute no authority where that element is not present under the record evidence. See Dawes v. J. C. Penney & Co., 236 S.W.2d 624 (Waco Civ.App., 1951, ref., n. r. e.); J. Weingarten, Inc. v. Brockman, 134 Tex. 451, 135 S.W.2d 698 (1940); and

Houston Nat. Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374 (1948).

■ In the absence of proof that the appellee either knew or should have known of danger, there could be no breach of duty and negligence. The appellee has negated any fact issue of any knowledge on its part of danger to plaintiffs or others. Under this record as a matter of law, there is no evidence of a condition existing upon the appellee's premises at the time in question denoting existence of a sufficient probability of the likelihood that a harmful event could occur so as to be foreseen by appellee. It follows that an owner or occupier of land can be charged with knowledge and appreciation of a dangerous condition on his premises only if a person of ordinary prudence from a reasonable inspection should have foreseen a probability that the condition would result in injury to another. Houston Lighting and Power Co. v. Brooks, 161 Tex. 267, 336 S. W.2d 603 (1960) and cases therein cited.

■■ The authority to condemn or remove appellee's lines is granted by an Airport Zoning Authority created by the Texas Airport Zoning Act of 1947. Art. 46e, V.A.C.S. This authority has the right to declare an existing structure, such as a transmission line, Art. 46e—1, V.A.C.S., a hazard and a public nuisance, Art. 46e—2, V.A.C.S., recognizing, however, that such structures cannot be removed without due process of law. The enforcement of the right to enjoin or abate the nuisance is specifically given to the political subdivision or agency claiming the existence of the hazard (Art. 46e—12). This statutory power has not been directed to defendant's structure and its land has not been condemned. The Act does not contemplate the use of its enforcement procedures by an individual and quite obviously the Legislature has pre-empted any common law right to declare such a structure a public nuisance.

"A public nuisance exists whenever acts or conditions are subversive of public

health or public order, or constitute an obstruction of public rights. . . .

"The difference between public and private nuisances is that a public nuisance affects the public at large, and a private nuisance affects the individual or a limited number of individuals only. The difference does not consist in any difference in the nature or quality of the thing itself, but in the parties affected." 41 Tex.Jur. 2d, Sec. 7, pp. 580–81.

■ The maintenance of appellee's structure has not been shown to adversely affect either the entire community, a public gathering place, or even a considerable portion of the citizenry as required to create a public nuisance. See Soap Corporation of America v. Balis, 223 S.W.2d 957 (Fort Worth Civ.App., 1949, ref., n. r. e.) and Ellen v. City of Bryan, 410 S.W.2d 463 (Waco Civ.App., 1966, ref., n. r. e.).

■ Since the transmission lines in question were lawfully erected, they could not constitute a nuisance per se. Neblett v. R. S. Sterling Inv. Co., 233 S.W. 604 (Beaumont Civ.App., 1921, writ ref.). Authorities recognizing the existence of public nuisance always reflect an unauthorized or unlawful erection or maintenance of a structure. See Compton v. Waco Bridge Co., 62 Tex. 715 (1883); Santa Fe Town-Site Co. v. Norvell, 207 S.W. 960 (Beaumont Civ.App., 1918, no writ hist.); Dozier v. City of Austin, 253 S.W. 554 (San Antonio Civ.App., 1923, writ dism.); Joseph v. City of Austin, 101 S.W.2d 381 (Austin Civ.App., 1936, writ ref.); McCall v. Alpine Telephone Corporation, 183 S.W.2d 205 (El Paso Civ.App., 1944, affirmed 143 Tex. 335, 184 S.W.2d 830); Jacksonville Ice & Electric Co. v. Moses, 63 Tex.Civ.App. 496, 134 S.W. 379 (1911, writ ref.); Moore & Savage v. Kopplin, 135 S.W. 1033 (Tex.Civ.App., 1911, writ ref.).

In Steele v. City of El Paso, 417 S.W.2d 923 (El Paso Civ.App., 1967, ref., n. r. e.) the Court said that, ". . . in order to constitute a nuisance, (the danger, if any) must be inherent in the thing itself and be beyond that arising from negligence in its use. The record does not indicate inherent danger was adequately pleaded or proved."

In the case of Lederman v. Cunningham, 283 S.W.2d 108 (Beaumont Civ.App., 1955, no writ hist.) the court said: "Before a nuisance may properly be said to exist, there must be an invasion of a public right or else of a right that arises from an interest in land. . . . 20 Texas Law Review, 399, 411, 412. . . . Soap Corporation of America v. Balis, Tex.Civ.App., 223 S.W.2d 957, er. ref. n. r. e.; Burditt v. Swenson, 17 Tex. 489, 502. . . ."

■ The Code of Federal Regulations, Title 14, Chap. 1, Sections 77.1 through 77.23, are not applicable under the facts of this case. Strother v. Pacific Gas & Electric Co., 94 Cal.App.2d 525, 211 P.2d 624, 629 (1949). The flight in question was intrastate rather than interstate; and Mangham Airport has no glide slope, no FAA control tower, and no instrument landing facilities. Assuming that appellee is subject to the provisions of the Code of Federal Regulations, as far as the erection of its structure is concerned, it would be governed by the regulations as they existed in 1955. The governing authority at that time was the Civil Aeronautics Act of 1938, as amended, inclusive of Regulations of the Administrator, § 625. Appellants rely solely upon sub-parts of 14 CFR 77.23 in an attempt to show appellee's structure to be an obstruction to navigation. The regulations in question clearly show the requirements to be operative only within an "instrument approach area." This was not an instrument approach.

■ Appellants cite Advisory Circular AC70/7460–1 (incorporated in 14 CFR 77.11(b)(3)) for the proposition that appellee's structure must be lighted. The lighting requirement does not apply to appellee. If it did, appellee was in compliance and did have the requisite lighting at the time of the accident. Since this was a daytime

accident failure to have lighting could not reasonably be considered a proximate cause of the aircraft accident as a matter of law.

Appellee raises both a Texas and a Federal Constitution question. Appellants rely upon 49 U.S.C.A. Section 1301.

In Mills v. Orcas Power & Light Company, 56 Wash.2d 807, 355 P.2d 781 (1960) the Court said, ". . . their poles stood in that land and their lines were lawfully placed in the immediate reaches above it. Whether it be called an easement, a franchise, or something else, they had a right not to have their poles and lines damaged or destroyed by someone trying to fly through them.

"I do not question the rights of the owners of municipal airports to condemn such an obstruction; nor do I question the right of the owner of the land to maintain an action for constitutional taking by reason of low flying planes. . . .

"Here we are concerned with property rights which have not been condemned or taken—the lawful right to maintain power and telephone lines. . . .

"If the plane's collision with their lines be no trespass, for some technical reason which I am unable to grasp, it was clearly an invasion of their right to maintain their lines where they were. . . ."

The requirements for marking, lighting and/or painting poles was not in effect upon the date of the erection of appellee's structure in 1955.

We find and hold that the trial court correctly granted the appellee's motion for summary judgment on the grounds that (1) the appellants Walker and Hancock occupied the status of trespassers or licensees at the time of the accident in question; (2) there is no evidence of wilfulness, wantonness or negligence on the part of appellee in the erection and/or maintenance of its structure in its relationship to plaintiffs; and (3) that appellants' flight interfered unreasonably with appellee's use of its structure erected and maintained upon its land.

There are no pleadings nor any controverting evidence by appellants raising any claim whatsoever of any act or omission on the part of appellee constituting wilfulness, wantonness or gross negligence against appellants in their capacities as trespassers and/or licensees. Hernandez v. Heldenfels, 374 S.W.2d 196 (Tex.1963); Carlisle v. J. Weingarten, Inc., 137 Tex. 220, 152 S.W.2d 1073 (1941); Texas-Louisiana Power Co. v. Webster, supra; Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (1950).

In Gulf Television Company v. Brown, 301 S.W.2d 256, 261 (Galveston Civ.App., 1957, affirmed at 157 Tex. 607, 306 S.W.2d 706) the court said: ". . . In fact, the right of plaintiff and of his patrons to navigate aircraft over the lands of others flows basically from a modern truncation of the 'ad coelum' concept. This is based on the practical necessities of flight. But the privilege does not transcend the right of a landowner to make proper beneficial use of his land, notwithstanding the fact that the use may interfere with aerial navigation, albeit the landowner's ad coelum rights are now limited so that he may not arbitrarily and whimsically, for instance for purposes of spite or duress, erect air hazards when such hazards would be without reasonably conceivable benefit to himself. . . ."

See Schronk v. Gilliam, 380 S.W.2d 743 (Waco Civ.App., 1964, no writ hist.) a case involving a landowner's suit against an aircraft spraying chemicals, in which the court said:

" 'A trespasser on land' has been defined 'as one who, not having title thereto, without consent of the true owner (thereof), makes entry thereon.' It is said also that 'every unauthorized entry upon land of another is a trespass' and 'the intent or motive prompting the trespass is immaterial.' McDaniel Bros. v. Wilson, Tex.Civ.App.,

70 S.W.2d 618, 621, writ ref. See 21 Tex. L.Rev. 78. . . . "

The case of Texas-Louisiana Power Co. v. Webster, 127 Tex. 126, 91 S.W.2d 302 (1936) relied upon by appellants, has no application to the facts of this case.

■ Appellants' argument that appellee has made no objection to repeated take-offs and landings from Mangham Field is correct; however, no one before appellants has ever hit its wires. Conceivably, it could be inferred that appellee has acquiesced in overflights, however, this is not the same as acquiescence or implied consent to flights made through appellee's wires. Such acquiescence, if any, on appellee's part could only serve to raise appellants' status from that of outright trespassers to mere licensees. See 40 Tex. Jur.2d, § 57, page 528, Negligence. The appellants must fit the classification of either trespassers or licensees.

". . . One who has no right to enter except by virtue of the landowner's consent can remain off the premises if he does not wish to subject himself to the risk of injury from such conditions. Where he has an opportunity to exercise an intelligent choice as to whether the advantage to be gained by his entry is sufficient to justify his incurring the risk, the landowner owes him no further duty of protection from harm. . . ." Harvey v. Seale, 362 S.W.2d 310 (Tex., 1962); Medallion Stores, Inc. v. Eidt, 405 S.W.2d 417 (Texarkana Civ.App., 1966, writ ref., n. r. e.).

The case of Mills v. Orcas Power & Light Co., supra, relied upon by the appellants, has no application to the facts of this case. Mills is contrary to the Texas decisions of Gulf Television Co. v. Brown, supra, and Schronk v. Gilliam, supra, in holding that there is no distinction to be made in the airspace as among trespassers, licensees and/or invitees.

There are other distinguishing factors. In Mills there was no evidence adduced in the cause and the plaintiff had the full benefit of his pleadings alone as the only "evidence" viewed on appeal. The defendant power company was a mere franchise holder and did not own its land in fee. There was no evidence as to the prior knowledge of the pilot as to the existence of the defendant's structure. In Mills the court had to assume that the pilot had no prior knowledge of the existence of the power lines and applied the rule that the defendant power company had a secondary duty to warn those who have no such knowledge.

In this cause the appellants, whether trespassers, licensees, or invitees, were quite aware at all times of the danger presented by appellee's structure.

We find and hold that the trial court correctly granted the Motion for Summary Judgment on the grounds that (1) appellants Walker and Hancock actually knew and appreciated the specific danger of allowing their aircraft to come into contact with appellee's wires; (2) appellee's wires were visible, open and obvious as a matter of law to appellants Walker and Hancock; and (3) appellants Walker and Hancock assumed the specific risk of allowing their aircraft to come into contact with appellee's wires.

The following cases involve a determination of the negligence or volenti question as a matter of law: Erck v. Zelios, 401 S.W.2d 867 (Dallas Civ.App., 1966, no writ hist.); Luckey v. Adams, 397 S.W.2d 519 (Tyler Civ.App., 1965, no writ hist.); Meinen v. Mercer, 390 S.W.2d 36 (Corpus Christi Civ.App., 1965, error ref., n. r. e.); Taylor v. Holland Electric Company, 386 S.W.2d 598 (Beaumont Civ.App., 1965, error dism.); Missouri-Kansas-Texas Railroad Co. v. Wagner, 400 S.W.2d 357 (Waco Civ.App., 1966, ref., n. r.e.).

■ In a conventional trial of this cause it would be incumbent upon appellants to prove to the trial court (assuming they qualified as invitees) (1) that they did not possess actual knowledge of the

danger; (2) that they did not fully appreciate the nature and extent of that danger; and (3) that the danger complained of was not so open and obvious as to charge them as a matter of law with such knowledge and appreciation of the danger. Adam Dante Corporation v. Sharpe, 483 S.W.2d 452 (Tex.1972). See also Massman-Johnson v. Gundolf, 484 S.W.2d 555 (Tex. 1972). However, since this is a summary judgment proceeding, the burden is cast upon defendant as movant to show the opposites of (1), (2), or (3) above as a matter of law.

In Wesson v. Gillespie, 382 S.W.2d 921 (Tex.1964) the court said:

"If we consider that the testimony of the plaintiff that 'it had always been dangerous; that she so considered it; but she kept on using it' referred to the entrance including the threshold, then the case is simple. By this statement, she admitted that she knew of the condition, knew it was dangerous, and appreciated the particular danger. Notwithstanding this knowledge and appreciation, she continued to use the entrance. She could not then recover. McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954)." See also Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60 (1953).

■ In the present cause appellants made at least 150 landings at Mangham Airfield, with constant knowledge of the dangerous condition of flying over the wires of appellee. They were well acquainted with the existence of the wires and did not like their presence at all. Under the "no-duty" doctrine, appellee had no duty to protect plaintiffs, even if they were invitees, from the alleged dangers which were clearly perceptible, obvious and well known to plaintiffs. Steele v. Slade, 353 S.W.2d 329 (Waco Civ.App., 1962, ref.); Medallion Stores, Inc. v. Eidt, supra.

In the case at bar the appellant, Hancock, actually knew of the existence of the wires and admitted that he also knew the height of the wires from the ground. Further, there was an altimeter in the aircraft which would have indicated the height had it been used.

The following citations are cases wherein plaintiffs have come in contact with electrical wires with full knowledge of the danger. Camp v. Kirkpatrick Co., 250 S.W.2d 413 (San Antonio Civ.App., 1952, ref., n. r. e.); Howard v. Jackson Electric Co-Operative, Inc., 430 S.W.2d 689 (Waco Civ.App., 1968, ref., n. r. e.); Cloud v. Houston Lighting & Power Co., 199 S.W.2d 260 (Galveston Civ.App., 1947, ref., n. r. e.); McGinty v. Texas Power & Light Co., 71 S.W.2d 354 (Dallas Civ.App., 1934, ref.); and West Texas Utilities Co. v. Dunlap, 175 S.W.2d 749 (Eastland Civ. App., 1943, no writ hist.).

The following authorities are in accord with the rule announced in the Dunlap case: Turner v. Texas Electric Service Co., 77 S.W.2d 728 (Fort Worth Civ.App., 1934, error dism.); West Texas Utilities Co. v. Renner, 53 S.W.2d 451 (Tex.Com. App., 1932, no writ hist.); and Southwestern Gas & Electric Co. v. Hutchins, 68 S.W.2d 1085 (Beaumont Civ.App., 1934, dism.).

See also American General Ins. Co. v. Southwestern Gas & Elec. Co., 115 F.2d 706 (5th Cir. Ct. of App., 1940) in which the court said: "The plaintiffs have shown no negligence whatever on the part of the defendant. It is clear that Southwestern Gas & Electric Company could not reasonably foresee that Texas Bitulithic Company would negligently run its metal crane against the high tension lines."

Appellants assert that "it is virtually legally and factually impossible for a person to fail to keep a proper lookout for a dangerous object, and at the same time to fully know, fully appreciate and fully be aware of its existence." There are many instances in which volenti non fit injuria and contributory negligence have over-

lapped so as to bar the plaintiff from recovery. See generally Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607 (1952); Murphy v. Milheiser, 30 S.W.2d 586 (Galveston Civ.App., 1930, ref.); Sargent v. Williams, 152 Tex. 413, 258 S.W.2d 787 (1953); Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex., 1963). In many cases of this nature the distinction between volenti and contributory negligence is more imagined than real; for whatever label is applied, the outcome is the same. In Schiller the court said that, "Some of the courts base the denial of a recovery on the contributory negligence of the guest, others on assumption of risk, and others on the volenti doctrine. But many of the courts say as did the Vermont court in the case of Packard v. Quesnel, . . . (112 Vt. 175, 22 A.2d (164) 167): 'We do not believe it important to classify this bar. The name to be applied to such conduct is of no great consequence. The result of the conduct is what counts and that result is preclusion from recovery.'"

It is common knowledge that even the most skillful drivers have accidents (Bernal v. Seitt, 158 Tex. 521, 313 S.W.2d 520 (1958)) and the usually careful driver may, through inadvertence, overlook or momentarily forget to keep a proper lookout (Teston v. Miller, 349 S.W.2d 296 (Beaumont Civ.App., 1961, ref., n. r. e.)). It would follow that a normally prudent pilot, fully apprised and aware of the existence of a known and obvious danger may still, as here, momentarily lose sight of the wires and proceed to his own injury.

■ As to volenti non fit injuria, the elements are: ". . . (1) the plaintiff has knowledge of facts constituting a dangerous condition or activity; (2) he knows the condition or activity is dangerous; (3) he appreciates the nature or extent of the danger; and (4) he voluntarily exposes himself to this danger." J. & W. Corporation v. Ball, 414 S.W.2d 143, 146 (Tex., 1967).

■ The only significant difference in this theory and that of "no-duty" is that in a conventional trial the plaintiff has the burden of negativing "no-duty" and the defendant has the burden to prove the elements of volenti. Adam Dante Corp. v. Sharpe, supra. One other difference is the additional element of voluntariness under volenti. Here, the appellants, in our opinion, did assume the risk in question with full knowledge and appreciation of a well recognized danger of crossing the wires, fulfilling all elements of volenti herein.

"Volenti is an affirmative defense to any negligence action in which the defendant is responsible for a dangerous condition (static or non-static) or activity of which the plaintiff knows, appreciates the danger and voluntarily exposes himself thereto." Rabb v. Coleman, 469 S.W.2d 384 (Tex., 1971). See Hauser v. Pacific Gas & Electric Co., 133 Cal.App. 222, 227, 23 P.2d 1068, 1070 (1933) and La Com v. Pacific Gas and Electric Company, 132 Cal.App.2d 114, 281 P.2d 894, 897 (1955).

■ The standard by which appellants' conduct is governed in volenti is subjective rather than objective, i. e., what they in fact see, know, understand and appreciate. Halepeska v. Callihan Interests, Inc., supra.

". . . while the cases speak of the requirement of actual knowledge and appreciation, the plaintiff may not close his eyes to obvious dangers; and he may not recover where it is shown that he is in possession of facts from which he would be legally charged with appreciation of the danger. Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607 (1952)." Halepeska, supra. See West Texas Utilities Co. v. Dunlap, 175 S.W.2d 749 (Eastland Civ.App., 1943, no writ hist.) charging persons with knowledge of the danger of electric wires.

The appellants, although charged both in law and actual fact of the existence of the wires, admittedly overlooked them by sight and admittedly failed to determine the actual height of the wires by use of the altimeter available in the aircraft. Two attempts to land over the wires had just been

**32**

made and the very purpose of the last pass was to clear the very wires in question. Both "pilot error" and "co-pilot error" are therefore so fixed under this record as to be incontestable.

We find and hold that the trial court correctly granted Defendant's Motion for Summary Judgment on the grounds that the conduct of appellant Walker, proximately causing all damage and injuries complained of herein, is imputed to all other appellants as a matter of law.

Hancock and Walker had a joint and mutual interest in the trip. Walker was testing Hancock's ability as a pilot for purposes of joining him as an interest holder in the aircraft. In like manner, Hancock was flying the craft and meeting Walker to see if he wanted to become a share-owning "partner" in the joint ownership of the craft. He knew that he was being considered to buy out one of the partners and he would have become an equal partner with the others.

■ The defendant satisfied its burden of proving a joint venture as between Walker and Hancock as a matter of law.

" 'In order to constitute occupants of a conveyance joint adventurers, there must be not only joint interest in the objects and purposes of the enterprise, but also an equal right, express or implied, to direct and control the conduct of each other in the operation of the conveyance.' El Paso Elec. Co. v. Leeper, Tex.Com.App., 60 S.

W.2d 187; LeSage v. Pryor, 137 Tex. 455, 154 S.W.2d 446; Straffus v. Barclay, 147 Tex. 600, 219 S.W.2d 65; Douty v. Delta Drilling Co., Tex.Civ.App., 264 S.W.2d 164 (Er. ref. n. r. e.)." Tonahill v. Pickett, 278 S.W.2d 930 (Waco Civ.App., 1955, ref., n. r. e.).

■ The imputed negligence/assumed risk question was a specific ground of defense assigned by appellee in its Motion for Summary Judgment. The trial court granted defendant's motion on all grounds. Appellants assign in their brief two general points of error and six specific points of error. None of the points are directed at imputed negligence. Their brief contains no argument complaining of the trial court's ruling on the imputed negligence/assumed risk question. Appellants acknowledge that the defendant pled this claim and that the trial court ruled in defendant's favor on this very question. Thus, whether or not the trial court was correct in its ruling on this specific ground of defense the appellants have waived any error on such ground. Hudson v. Buddie's Super Markets, Inc., 488 S.W.2d 143 (Fort Worth Civ.App., 1972, no writ hist.). Malooly Brothers, Inc. v. Napier, 461 S.W.2d 119 (Tex., 1970).

We have carefully considered each point of error which was presented on this appeal. We respectively overrule each of them and affirm the judgment of the trial court.